## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **PETER J. TERVEER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 12-1290 (CKK)** |
| | ) | |
| | ) | **ECF** |
| **v.** | ) | |
| | ) | |
| **JAMES H. BILLINGTON, Librarian,** | ) | |
| **Library of Congress,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

Defendant James H. Billington, Librarian, Library of Congress ("Library"), by and through

undersigned counsel, respectfully moves to dismiss the above-captioned case for lack of subject

matter jurisdiction and for failure to state a claim.  Plaintiff Peter J. TerVeer brings this action

pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e, *et seq.*; the

Due Process and Equal Protection Clauses of the Fifth Amendment of the United States

Constitution; the Library of Congress Act, 2 U.S.C. § 140; and the Library's regulations and

policies regarding non-discrimination and the prevention of harassment.  Plaintiff's Complaint

should be dismissed in its entirety with prejudice for the following reasons:[1]

---

[1] The Court may consider each of the documents attached to this motion in deciding the
motion to dismiss, and without converting it to a motion for summary judgment, because each
document is either incorporated by reference in the Complaint, or is a Library of Congress
regulation.  A court may consider "the facts alleged in the complaint, documents attached as
exhibits or incorporated by reference in the complaint," as well as "documents upon which the
plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in
the complaint but by the defendant in a motion to dismiss."  *Ward v. D.C. Dep't of Youth Rehab.
Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotations and citations omitted).  It is

First, Plaintiff cannot state a claim related to "constructive discharge" because he was terminated and did not retire or resign.  He also cannot state a claim for failure to allow him to transfer to a new position because the transfer he alleges was proposed as part of a conciliation effort.  Both claims should also be dismissed because Plaintiff failed to exhaust his administrative remedies.

Second, Plaintiff's discrimination and retaliation claims fall short.   Plaintiff alleges that he was subject to harassment after his employer learned that he was gay, and he presents his claim as one of non-conformity with sex stereotypes.  But the detailed allegations in the Complaint do not provide what courts have held is required to show that sex stereotyping was the cause of his employer's actions.  And having failed to meet those standards for his sex discrimination claim, Plaintiff cannot succeed by simply recasting the same claims as claims based on religion or retaliation.  His remaining retaliation claims fail because they do not rise to the level of severe or pervasive harassment that courts have required to state a claim under Title VII.

Third, Plaintiff's constitutional employment discrimination claims are preempted by Title VII.

Finally, Plaintiff cannot sue the Library for alleged violations of the Library of Congress Act or the Library's regulations regarding its non-discrimination policies because neither provide an express waiver of sovereign immunity.

Consequently, Plaintiff's Complaint should be dismissed in its entirety.

---

also proper to consider documents of which courts may take judicial notice, such as government documents and other public records, when reviewing a Rule 12(b)(6) motion.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Respectfully submitted,

RONALD C. MACHEN JR, DC Bar # 447889
United States Attorney for the District of
  Columbia

DANIEL F. VAN HORN, DC Bar # 924092
Chief, Civil Division


By:     _____/s/_____

JOHN G. INTERRANTE
PA Bar # 61373
Senior Litigation Counsel
Civil Division
555 4th Street, NW, Room E-4808
Washington, DC  20530
Tel:    202.514.7220
Fax:    202.514.8780
Email: John.Interrante@usdoj.gov


Of counsel:

Julia O'Brien
Office of the General Counsel
Library of Congress
101 Independence Ave., S.E., Room LM601
Washington, D.C.  20540-1050

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PETER J. TERVEER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 12-1290 (CKK)** |
| | ) | |
| | ) | **ECF** |
| **v.** | ) | |
| | ) | |
| **JAMES H. BILLINGTON, Librarian,** | ) | |
| **Library of Congress,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF HIS MOTION TO DISMISS**

**INTRODUCTION**

The Complaint filed by Plaintiff Peter J. TerVeer ("TerVeer") should be dismissed.  As described below, his claim of constructive discharge fails because he was, in fact, terminated and did not retire or resign.  As to his termination, he chose to challenge it pursuant to an alternate administrative scheme separate and apart from the Library's administrative Equal Employment Opportunity ("EEO") process, and cannot now challenge his termination (or mislabel his termination as a constructive discharge) in this Court.  His claim that the Library discriminated against him by denying him a transfer fails because the alleged transfer he references was proposed as part of a conciliation effort.  Alternatively, both claims should be dismissed because Plaintiff failed to exhaust these claims through the Library's EEO administrative process.

Plaintiff also alleges that he was subject to harassment after his employer learned that he was gay.  Plaintiff attempts to frame these claims as claims of discrimination on the basis of sex stereotyping, religion, and retaliation.  Assuming that the allegations are true, as Defendant must

for purposes of a Rule 12(b)(6) motion, under the relevant case law, Plaintiff's allegations do not state a claim under Title VII.  Plaintiff's constitutional claims in Counts IV and V also should be dismissed in light of binding precedent establishing that, regardless of whether Congress has provided a remedy, Title VII is the exclusive means for pursuing claims of employment discrimination against the federal government.  Finally, the United States has not consented to be sued under the Library of Congress Act or the Library's internal regulations, and thus Counts VI and VII of the Complaint should be dismissed.

Although Plaintiff's effort to proceed in this Court fails, the Library has internal processes for addressing claims of discrimination on the basis of sexual orientation.  As explained *infra,* such claims may be presented to the Library's Dispute Resolution Center or pursued in front of an impartial hearing officer as part of the Library's internal grievance process.  Moreover, employees may appeal adverse actions through the Library's adverse action appeals process, again before an impartial hearing officer.  Indeed, Plaintiff availed himself of these processes.  Thus, although Plaintiff's Complaint should be dismissed, he was not left without further recourse.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Plaintiff's Employment with the Library*

In February 2008, the Library hired Plaintiff as a temporary Management Analyst, a GS-7 position in the Office of the Inspector General ("OIG").  Compl. ¶¶ 1, 6.  In October 2008, he was hired on a permanent basis in the same position.  *Id.* ¶ 6.  In April 2012, Plaintiff was terminated by the Library.  *Id.* ¶¶ 51-52.  At the time of his termination, Plaintiff was a GS-11 Management Analyst.  *Id.* ¶¶ 17, 51.  John Mech ("Mech") was Plaintiff's first-level supervisor

2

throughout his tenure with the Library, and Nicholas Christopher ("Christopher") was Plaintiff's second-level supervisor. *Id.* ¶ 1.

In his Complaint, Plaintiff identifies himself as a gay man and "a reconciling Christian" ("a Christian faith that fully accepts him as a homosexual male."). *Id.* ¶¶ 1, 64. He alleges that from the time he started at the Library until around August 2009, he "excelled at the OIG," received promotions and within-grade increases, and was generally recognized for his "exemplary work product." *Id.* ¶¶ 6-7. In addition, he alleges that he and Mech had a "friendly relationship," that Mech introduced Plaintiff to Mech's daughter and other family members, and that Plaintiff and Mech's daughter became "friends" via Facebook in January 2009. *Id.* ¶¶ 1, 9.

Although Plaintiff does not allege that he told Mech that he (Plaintiff) is gay, he alleges that in early August 2009, Mech learned of this fact. *Id.* ¶¶ 10-12. Plaintiff claims that after Mech learned of Plaintiff's sexual orientation, Mech's attitude changed toward Plaintiff, and that Mech "treated [him] differently[.]" *Id.* ¶ 13. Much of the remainder of the Complaint describes a number of actions that Plaintiff contends Mech and/or Christopher took against Plaintiff from August 2009 until around August 2011, when Plaintiff began a period of extended absences from the office. *Id.* ¶¶ 13-54. These actions include alleged lectures from Mech involving religious condemnation of gays and lesbians, additional work, more difficult work, additional scrutiny, and negative performance evaluations, among others, all allegedly flowing from Mech's discovery of Plaintiff's sexual orientation. *Id.* Despite the alleged change in Mech's attitude in August 2009, Plaintiff alleges that he received a within-grade salary increase in March 2010 and a promotion to GS-11 in April 2010. *Id.* ¶ 17.

3

Plaintiff also explains that around this same time period, he was assigned to a project referred to as the "Voyager" project.  *Id.* ¶ 15.  His Complaint alleges that the Library began to express significant concerns about his work performance on this project during 2010 and 2011.  *Id.* ¶¶ 20-36.  Plaintiff alleges that, in June 2010, December 2010, and February 2011, the Library gave him negative performance reviews for his work on Voyager, *id.* ¶ 20, that in March 2011, the Library gave him a written warning regarding his performance, *id.* ¶ 31, and that in June 2011, he received an evaluation of "minimally successful," which resulted in a denial of a within-grade salary increase, *id.* ¶ 36.  Plaintiff also alleges that he was out of the office on paid leave between August 19, 2011, and October 12, 2011, and on unpaid leave approved under the Family Medical Leave Act ("FMLA") between October 12, 2011, until January 2, 2012.  *Id.* ¶¶ 39, 44, 48, 51.  After the expiration of his FMLA leave on January 2, 2012, Plaintiff did not return to the office, and on April 6, 2012, the Library terminated him due to the fact that he was in Absence Without Official Leave ("AWOL") status.  *Id.* ¶¶ 48-51.

<u>*Administrative Proceedings*</u>

In the Complaint, Plaintiff alleges that on March 16, 2011, he discussed the discrimination he was experiencing with the Library's Equal Employment Opportunity ("EEO") office, called the Office of Opportunity, Inclusiveness and Compliance ("OIC").  Compl. ¶ 34.  However, he did not file an informal complaint of discrimination with the OIC until September 28, 2011.  *Id.* ¶ 40; Ex. A, Sept. 28, 2011 EEO Complaint.  The informal complaint form included a list of bases for Plaintiff to identify the alleged discrimination, allowing him to check a box for each basis that applied to him.  Although the list of potential bases of discrimination included race, color, religion, sex, national origin, age, disability, sexual harassment, and

4

reprisal, the only boxes plaintiff marked were "Sex" and "Reprisal." Ex. A at 1.

On November 9, 2011, Plaintiff filed a formal complaint of discrimination with the OIC, in which he alleged discrimination dating back to August 2009, and retaliation dating back to July 2010 by Mech, Christopher, and senior auditor Patrick Cunningham. Compl. ¶ 47; Ex. B, Nov. 9, 2011 EEO Complaint. Plaintiff indicated on the formal complaint that he was alleging discrimination based on sex and reprisal, and for the first time claimed that religion and sexual harassment were also bases for the alleged discrimination. Ex. B at 1. The OIC accepted his formal complaint for investigation and, after an investigation, issued a written decision dated April 26, 2012, rejecting his claims.[2] Ex. D, OIC Decision. At this point, Plaintiff could have requested a formal hearing overseen by an impartial hearing officer, during which he could have called his own witnesses and cross-examined the Library's witnesses. *See* Library of Congress Regulation ("LCR") 2010-3.1, § 10 (attached as Ex. C). These options were set out in the April 26, 2012, written decision. Ex. D, OIC Decision. He declined to request a formal hearing, and on May 8, 2012, the OIC decision became final. Compl. ¶ 53.

Meanwhile, as Plaintiff explains in his Complaint, on March 29, 2012, the Library notified Plaintiff that he would be removed from his position effective April 6, 2012, due to the fact that he had not reported to work or taken approved leave since January 2, 2012, *i.e.*, he had been in AWOL status. *Id.* ¶¶ 48, 51. On April 5, 2012, he elected to appeal his termination under another Library of Congress Regulation, LCR 2020-3.1 (attached as Ex. E), *id.* ¶ 52,

---

[2] Because the OIC accepted his claims of sexual orientation discrimination, *cf.* Library of Congress Regulation 2010-3.1 (attached as Ex. C), Plaintiff was able to take advantage of the added procedures provided by the Library's EEO process.

which, *inter alia*, allows Library employees to challenge a termination and to request a formal

hearing before an impartial hearing officer, Ex. E, LCR 2020-3.1, § 11.  At the time that he filed

his Complaint with this Court, Plaintiff's appeal was still pending in the Library's adverse action

appeals process.  *Id.*  The Library thereafter informed Plaintiff in writing that it believed this

Court lacked jurisdiction to review claims related to his termination, but that until the Court

resolved this issue, the Library would stay Plaintiff's termination appeal.  Ex. F, August 6, 2012

Letter from Evelio Rubiella to Christopher Brown.  Plaintiff did not object or otherwise respond

to the Library's letter.

### *Federal Court Complaint*

On August 3, 2012, Plaintiff filed the instant Complaint, alleging discrimination based on

his sex and religion as well as in retaliation for his protected activity under Title VII (Counts I-

III).  He claims that the Library: (1) subjected him to a hostile work environment,

(2) constructively discharged him, and (3) failed to transfer him to another position.  Compl.

¶¶ 49, 54, 84.  In addition, he alleges constitutional violations under the Due Process and Equal

Protection Clauses of the Fifth Amendment (Counts IV and V), and asserts a private right of

action under the Library of Congress Act, 2 U.S.C. § 140, and the Library's regulations

governing its non-discrimination policies (Counts VI and VII).

## **LEGAL STANDARDS**

### *Lack of Subject Matter Jurisdiction*

Pursuant to Rule 12(b)(1), the Court may dismiss a complaint for lack of subject matter

jurisdiction.  In deciding a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing

that the court has subject matter jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555,

561 (1992); *Pitney Bowes, Inc. v. USPS*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998).  In deciding a

Rule 12(b)(1) motion, the Court may consider materials outside the pleadings.  *Herbert v. Nat'l*

*Acad. of Scis.*, 974 F.3d 192, 197 (D.C. Cir. 1992); *Ibrahim v. Unisys Corp.,* 582 F. Supp. 2d 41,

45 (D.D.C. 2008).

### *Failure to State a Claim*

Pursuant to Rule 12(b)(6), the Court may dismiss a complaint for failure to state a claim

upon which relief may be granted.  In ruling on a Rule 12(b)(6) motion, courts are to presume the

truth of all factual allegations in the complaint but need not and should not accept "'naked

assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (brackets in original).

Courts are also "not bound to accept as true a legal conclusion couched as a factual allegation."

*Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A court may consider "the facts

alleged in the complaint, documents attached as exhibits or incorporated by reference in the

complaint," as well as "documents upon which the plaintiff's complaint necessarily relies even if

the document is produced not by the plaintiff in the complaint but by the defendant in a motion

to dismiss."  *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C.

2011) (internal quotations and citations omitted); *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 67

n.5 (D.D.C. 2007) (citation omitted).  It is also proper to consider documents of which courts

may take judicial notice, such as government documents and other public records, when

reviewing a Rule 12(b)(6) motion.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d

621, 624 (D.C. Cir. 1997).  Each of the documents attached to this motion may therefore be

considered by the Court in deciding the motion to dismiss without converting it to a motion for

summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure.

## ARGUMENT

Plaintiff alleges first that he was constructively discharged, and he contests the Library's refusal to transfer him. Those claims should both be dismissed for failure to state a claim and for failure to exhaust these claims through the Library's EEO administrative process.

Plaintiff also alleges that he was subject to harassment after his employer learned that he was gay, and he presents his claim as one of non-conformity with sex stereotypes. But the detailed allegations in the Complaint do not provide what courts have held is required to show that sex stereotyping was the cause of his employer's actions. And having failed to meet those standards for his sex discrimination claim, Plaintiff cannot succeed by simply recasting the same claims as a claim based on religion or protected opposition conduct. As to the remaining retaliation claims, the facts do not rise to the level of severe or pervasive harassment that the D.C. Circuit has held is necessary to state a claim under Title VII.

Plaintiff's constitutional claims should be dismissed because they are preempted by Title VII. Finally, the remainder of Plaintiff's claims under the Library of Congress Act and Library regulations and policies should be dismissed for lack of subject matter jurisdiction.

## I.   PLAINTIFF'S CONSTRUCTIVE DISCHARGE AND TRANSFER CLAIMS FAIL TO STATE A CLAIM FOR RELIEF.

In each of the three counts alleging violations of Title VII, Plaintiff alleges that he was, *inter alia*, denied a transfer and constructively terminated from his position at the Library for either discriminatory or retaliatory reasons. *See* Compl. ¶¶ 57-58 (Count I, alleging sex discrimination); ¶ 68 (Count II, alleging religious discrimination); and ¶ 84 (Count III, alleging retaliation). These claims fail as a matter of law.

**A.      Plaintiff Cannot State a Claim for Constructive Discharge Because He Was Terminated and Did Not Resign *and* Because He Elected to Challenge His Termination Through the Library's Adverse Action Process and Not the Library's EEO Administrative Process**.

In order to state a claim for constructive discharge, a plaintiff "'must show that [an] abusive working environment became so intolerable that her resignation qualified as a fitting response.'" *Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004)); *see also Aliotta v. Bair,* 614 F.3d 556, 566 (D.C. Cir. 2010) ("In certain cases, the doctrine of constructive discharge enables an employee to . . . demonstrate she suffered an adverse employment action by showing [a] resignation or retirement was, in fact, not voluntary."); *Green v. Sutherlin*, No. 99–2843, 2000 WL 222853, at *2 (E.D. La. Feb. 17, 2000) (dismissing constructive discharge claim when plaintiff was terminated and did not resign).  Plaintiff does not allege in his Complaint that he resigned or retired; instead, he alleges that he was terminated.  Compl. ¶ 1.  As such, he cannot state a constructive discharge claim.

Nor can he challenge his *actual termination* in this case.  First, he did not plead any challenge to it---none of the counts in the Complaint assert that his termination was an adverse employment action or the result of prohibited discrimination.  More important, however, Plaintiff is barred from challenging his termination here because he opted to pursue an alternate administrative remedy.  When Plaintiff learned he was being terminated, the Library informed him that he could challenge his termination by pursuing an appeal through, *inter alia*, the Library's Adverse Action appeal process, Ex. E, LCR 2020-3.1, or the Library's EEO administrative process, but not both.  Compl. ¶ 51; Ex. G, March 29, 2012 Letter from Karl W. Schornagel to Peter J. TerVeer.  He elected to appeal his termination via the adverse action process, a process that was pending at the time this Complaint was filed.  Compl. ¶ 52.  Plaintiff

never filed a complaint of discrimination with the OIC based on his termination.  Hence, he

cannot now pursue a challenge to his termination before this Court.  Additionally, as explained

below, because he did not exhaust his termination claims through the Library's EEO

administrative process, and is now time barred from doing so, any challenge to his termination

under Title VII in this case should be dismissed for failure to exhaust his administrative

remedies.

> **B.**     **Plaintiff Cannot State a Claim for Failure to Transfer Because the Proposed Transfer Was An Offer Made in Conciliation and is Not Actionable.**

Plaintiff cannot challenge an alleged failure to transfer him to another position because

the transfer in question was, as recited in the Complaint, a proposed resolution suggested by an

EEO counselor.  *See* Compl. ¶¶ 34-35.  Under the Library's EEO guidelines, EEO counselors

shall, *inter alia*, "seek resolution of [informal complaints of discrimination] on as *informal and*

*confidential* basis as possible."  Ex. C, LCR 2010-3.1, § 3E (emphasis added).  The Library's

counselors do not investigate discrimination claims or render decisions on them; their role is akin

to that of a mediator.  *Id.* §§ 3E, 4.  For this reason, courts have generally recognized that EEO

mediation processes---and settlement offers made as part of those processes---are confidential

and cannot give rise to separate claims of employment discrimination.  *See Olitsky v. Spencer*

*Gifts, Inc.*, 842 F.2d 123, 126-27 (5th Cir. 1998) (holding that evidence from an Equal

Employment Opportunity Commission mediation session could not be used in subsequent

litigation); *Mertz v. Marsh*, 786 F.2d 1578, 1580-81 (11th Cir. 1986) (noting that the

precomplaint process is informal and that identities of aggrieved persons are confidential); *see*

*also Dura v. Dalton*, EEOC Appeal No. 01975249, 1998 WL 201750, at *3 (Apr. 15, 1998)

(keeping out statements made during informal EEO resolution meetings); *Nelson v. Henderson*,

EEOC Pet. No. 03980133, 1999 WL 111831, at *3 n.3 (Feb. 24, 1999) (stating that the EEO

counseling process requires confidentiality); *Harris v. Dalton*, EEOC Appeal No. 01943516,

1994 WL 746376, at *2 (Mar. 23, 1995) (same).[3]  Indeed, allowing the introduction of settlement

discussions made during the EEO counseling process would discourage employers from making

such offers in the first place and thus would undermine the effectiveness of this mediation

process.

In this instance, Plaintiff alleges that the Library discriminated against him by failing to

transfer him to a new position, but alleges that this transfer was proposed by one of the Library's

EEO counselors.  Because the Library's EEO counseling process is a confidential process and

discussions made therein cannot form the basis of additional liability, Plaintiff's claim associated

with this alleged failure to transfer should be dismissed.

**C.**      **In the Alternative, Plaintiff's Claims of Constructive Discharge, Failure to
Transfer, and Other Claims Involving Discrete Acts Should Be Dismissed for
Failure to Timely Exhaust.**

Plaintiff's constructive discharge and failure to transfer claims also fail because Plaintiff

did not administratively exhaust these discrete acts of discrimination.  By statute, the Librarian of

---

[3]  Although Defendant does not move to dismiss on this basis at this time, it is also unlikely that the "failure of transfer" alleged in the Complaint would rise to the level of an adverse action.  *See Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999) (holding that a plaintiff who is denied a lateral transfer "in which she suffers no diminution in pay or benefits . . . does not suffer an actionable injury unless there are some other materially adverse consequences . . . [m]ere idiosyncrasies of personal preference are not sufficient to state an injury").  The Supreme Court has also made clear that "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).  As described in the Complaint, the "transfer" at issue here plainly does not rise to this level.

Congress is required to exercise the authority granted to the Equal Employment Opportunity Commission.  *See* 42 U.S.C. § 2000e-16(b).  In accordance with that statute, the Librarian of Congress has promulgated Library of Congress Regulation ("LCR") 2010-3.1, entitled Resolution of Problems, Complaints and Charges of Discrimination in Library Employment and Staff Relations Under the Equal Employment Opportunity Program.  Ex. C.  Under § 4A of LCR 2010-3.1, an employee who believes that he is being discriminated against must contact the agency's EEO counseling office (the OIC) "not later than 20 workdays after the date of the alleged discriminatory matter."  *Id.* § 4A.  In addition, an employee who is unsatisfied at the conclusion of the EEO counseling process must submit a formal administrative complaint of discrimination to the OIC.  *Id.* § 5.  This administrative complaint must be submitted "within 10 workdays of the date of receipt of a final notice from a Counselor" and may not raise allegations that were not previously brought to the attention of an EEO Counselor.  *Id.* § 6B.  As such, in order to administratively exhaust a federal court complaint of discrimination, a plaintiff must have raised each claim of discrimination with an EEO counselor within 20 days of the date of the alleged adverse action and must have exhausted such claim in a formal administrative complaint.

Plaintiff did not contact the OIC regarding his constructive discharge, termination, or failure to transfer claims, nor did he seek to amend his November 9, 2011, formal administrative EEO complaint to include these challenges.  *See* Ex. A, Sept. 28, 2011 EEO Informal Complaint; Ex. B, Nov. 9, 2011 EEO Formal Complaint.  As such, he failed to exhaust these claims and they should be dismissed.  *See Baker v. Library of Congress*, 260 F. Supp. 2d 59, 64 (D.D.C. 2003) (dismissing claims of national origin and gender discrimination for failing to exhaust administrative remedies); *see also Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003)

("Because timely exhaustion of administrative remedies is a prerequisite to a Title VII action

against the federal government, the [claim at issue] is not properly before this Court."); *Bowden*

*v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Bayer v. Dep't of Treasury*, 956 F.2d 330,

332 (D.C. Cir. 1992) (stating that administrative exhaustion is required before presenting Title

VII claims in federal court); *Howard v. Evans*, 193 F. Supp. 2d 221, 228 (D.D.C. 2002) ("[A]

federal employee may assert a Title VII complaint in court only after a timely complaint has

been presented administratively to the agency involved.").

Similarly, his allegation that he was denied a promotion in the form of a within-grade

salary increase, Compl. ¶ 36, was not timely exhausted and should be dismissed.  According to

the Complaint, Mech rated Plaintiff as "minimally successful" (resulting in the denial of a

within-grade increase) on June 24, 2011.  Compl. ¶ 36.  On June 30, 2011, Plaintiff then asked

Christopher to reconsider the evaluation.  *Id.*  ¶ 38.  According to Plaintiff's November 9, 2011

EEO complaint, Christopher informed Plaintiff on July 21, 2011, that he (Christopher) would not

change the performance evaluation.  Ex. B.  Even assuming that the time to contact the EEO

office began on July 21 when Christopher declined to change Mech's performance evaluation,

Plaintiff does not allege he contacted the OIC until September 28, 2011, several weeks after the

20-day deadline (August 10, 2011) for making such contact on this matter.  The allegation is thus

untimely and should be dismissed.[4]

----

[4]  Any attempt by Plaintiff to argue that he need not exhaust these claims because they
are part of a hostile work environment claim fails.  The Supreme Court has held that "discrete
discriminatory acts are not actionable if time barred, even when they are related to acts alleged in
timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  In light
of *Morgan*, courts in this district have required plaintiffs complaining of separate unlawful
employment acts---which the Court defined in *Morgan* as "[d]iscrete acts such as termination,

## II.   PLAINTIFF'S DISCRIMINATION AND RETALIATION CLAIMS SHOULD BE DISMISSED.

Plaintiff alleges next that the Library violated Title VII by subjecting him to a hostile work environment once his supervisor learned that he was gay.  Plaintiff's claims should be dismissed.  Plaintiff presents his claim as one of non-conformity with sex stereotypes, but the detailed allegations in the Complaint do not provide what courts have held is required to show that sex stereotyping was the cause of his employer's actions.  Likewise, Plaintiff may not simply recast that same claim as one based on religion, and he has not alleged that any Library employee had any knowledge of Plaintiff's religious beliefs or denomination, let alone made any evaluation of such issues.  For this reason, his religious discrimination claim also fails.  In addition, because Plaintiff cannot demonstrate that he was engaged in protected activity opposing discrimination covered by Title VII and because the remaining retaliation claims are not sufficiently severe and pervasive to state a claim, his retaliation claims also fail.

### A.     Sex Discrimination

Title VII prohibits discrimination in employment "based on . . . sex."  42 U.S.C. § 2000e-

---

failure to promote, denial of transfer, or refusal to hire," *id.* at 114---to exhaust each of those claims separately through the EEO process.  *See Payne v. Salazar*, 628 F. Supp. 2d 42, 51-52 (D.D.C. 2009) (Kollar-Kotelly, J.), *rev'd in part on other grounds* 619 F.3d 56 (D.C. Cir. 2010); *Wada v. Tomlinson*, 517 F. Supp. 2d 148, 183 (D.D.C. 2007), *aff'd,* 296 Fed. App'x 77 (D.C. Cir. 2008); *Camp v. Dist. of Columbia*, No. 04-234, 2006 U.S. Dist. LEXIS 13317, at *25-26 (D.D.C. Mar. 14, 2006) ("While [Plaintiff's] retaliatory termination claims may be the 'culmination' of her sexual harassment/gender discrimination claims, pursuant to *Morgan*, Plaintiff is required to exhaust her administrative remedies for her termination/retaliation claim, which is a separate discrete act.").  Plaintiff's claims---that the Library constructively discharged him, failed to transfer him, and denied him a promotion in violation of Title VII---fall into the category of discrete employment acts that must be separately exhausted; indeed, "termination" is the first item on the Supreme Court's list in *Morgan*.

16(a).  Subject to a few narrow exceptions not applicable here, Title VII prohibits employers

from discriminating against employees on the basis of their sex or from treating similarly

situated men differently from similarly situated women.  *See Oncale v. Sundowner Offshore*

*Servs., Inc.*, 523 U.S. 75, 80-81 (1998); *Taylor v. Solis*, 571 F.3d 1313, 1318 (D.C. Cir. 2009).

In Count I, Plaintiff alleges that he was subjected to sex discrimination (hostile work

environment, constructive discharge, and failure to transfer) in violation of Title VII.  He

presents his sex discrimination claim as one of non-conformity with sex stereotypes, *see Price*

*Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (holding that, in order to establish a claim of

intentional discrimination on the basis of sex, employees may point to evidence of "sex

stereotyping"), claiming that when his supervisors learned "that [he] was a homosexual male, the

Defendant subjected him to harsh and discriminatory working conditions[,]" Compl. ¶ 57.  As

such, he contends that he was subject to "disparate treatment [] motivated by the fact that

[Plaintiff's] status as a homosexual male did not conform to the Defendant's gender stereotypes

associated with men . . . ."  *Id.* ¶ 59.

Plaintiff casts his claim as one for sex stereotyping because courts have uniformly

concluded that Title VII does not provide a remedy for claims of discrimination based on sexual

orientation standing alone.  *See, e.g., Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 763 (6th Cir.

2006); *Medina v. Income Support Div.*, 413 F.3d 1131, 1135 (10th Cir. 2005); *Hamm v.*

*Weyauwega Milk Prods., Inc.,* 332 F.3d 1058, 1064 (7th Cir. 2003); *Bibby v. Phila. Coca-Cola*

*Bottling Co.*, 260 F.3d 257, 261 (3d Cir. 2001); *Rene v. MGM Grand Hotel, Inc*., 243 F.3d 1206,

1208 (9th Cir. 2001); *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000); *Higgins v. New*

*Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999); *Hopkins v. Balt. Gas & Elec. Co.*,

15

77 F.3d 745, 751-52 & n.3 (4th Cir. 1996); *Williamson v. A.G. Edwards & Sons*, 876 F.2d 69, 70

(8th Cir. 1989); *Smith v. Liberty Mut. Ins. Co.*, 569 F.2d 325, 326-27 (5th Cir. 1978); *see also*

*Schroer v. Billington,* 424 F. Supp. 2d 203, 208 (D.D.C. 2006) (explaining that post-*Price*

*Waterhouse*, courts have "consistently held that Title VII does not prohibit discrimination based

on sexual orientation").

In advancing a sex stereotyping claim, however, it is not enough for a plaintiff to allege

merely that he or she was the victim of an adverse employment action because of his or her

failure to conform to gender stereotypes.  Rather, courts have generally required plaintiffs to set

forth specific allegations regarding the particular ways in which an employee failed to conform

to such stereotypes – generally relating to an employee's behavior, demeanor, or appearance in

the workplace – and allegations to support the claim that this non-conformity negatively

influenced the employer's decision.  *See Smith v. City of Salem,* 378 F.3d 566, 574-75 (6th Cir.

2004); *Vickers*, 453 F.3d at 763; *Medina*, 413 F.3d at 1135; *Bibby*, 260 F.3d at 264; *see also*

*Schroer,* 424 F. Supp. 2d at 211 (holding, on motion to dismiss, that plaintiff's complaint failed

to set forth specific allegations about "the employee's appearance or conduct and the employer's

stereotypical perceptions" to sustain a claim of sex stereotyping under Title VII).  In this case,

however, Plaintiff fails to offer anything more than the conclusory statement that, as a result of

his sexual orientation, he "did not conform to the Defendant's gender stereotypes associated with

men under Mech's supervison."  Compl. ¶ 59.

In the first paragraph of the Complaint, for example, Plaintiff alleges that his supervisor's

"attitude toward [him] became hostile after *learning that Plaintiff [was] homosexual,* Compl. ¶ 1

(emphasis added), and the remainder of the Complaint is to the same effect.  *See, e.g.*, *id.* ¶¶ 11-

16

12 (alleging that, shortly after Mech's daughter purportedly indicated [to Plaintiff via Facebook] that "she believed homosexual men to be weird," Plaintiff's relationship with Mech changed); *id.* ¶ 57 ("Upon learning that TerVeer was a homosexual male, the Defendant subjected him to harsh and discriminatory working conditions and religious lectures."); *see also id.* ¶¶ 18, 20, 27.

Nothing in the Complaint indicates that the supervisor's conduct was motivated by judgments about plaintiff's behavior, demeanor or appearance, and there are no facts to support an allegation that the employer was motivated by his views about Plaintiff's conformity (or lack thereof) with sex stereotypes.  Such allegations are simply insufficient to state a claim under Title VII, even at this stage of the proceedings.  *See, e.g.*, *Vickers*, 453 F.3d at 763; *Gilbert v. Country Music Ass'n*, No. 09-6398, 2011 WL 3288655, at *3 (6th Cir. Aug. 2, 2011); *Schroer*, 424 F. Supp. 2d at 211.[5]

### B.    Religious Discrimination

Plaintiff's religious discrimination claim (Count II) also fails.  Title VII prohibits an employer from discriminating against any employee because of the employee's religion.  42 U.S.C. § 2000e-16(a).  Here, although he claims that the Library did not "approve of [his] brand of Christianity" which "fully accepts him as a homosexual male[,]" Compl. ¶¶ 64, 66, Plaintiff cites as religious discrimination much of the same conduct described in Count I as sex discrimination.  But Plaintiff cannot avoid the flaws in his sex discrimination claim simply by recasting them as discrimination based on religion. 42 U.S.C. § 2000e-16(a).  In addition,

---

[5] As explained *infra* Section IV, while Plaintiff's claim here should be dismissed, discrimination on the basis of sexual orientation is a violation of the Library's internal regulations.  Plaintiff could have pursued his claims of sexual orientation discrimination either through the Library's grievance procedures or with the Library's Dispute Resolution Center, but elected not to do so.

nothing in Plaintiff's Complaint provides factual support for an allegation that he was targeted

because his employer condemned Plaintiff's religious beliefs or his "brand of Christianity."

Instead, the purported statements depict a supervisor taking issue with Plaintiff's sexual

orientation.  *See, e.g.*, Compl. ¶ 18 (Mech allegedly told Plaintiff that "it is a sin to be

homosexual . . . homosexuality was wrong"); *see generally id.* ¶¶ 18-19.  Plaintiff's religious

discrimination claim should be dismissed.  *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 292-93 (3d

Cir. 2009).

### C.      Retaliation

Title VII's anti-retaliation provision makes it unlawful for an employer "to discriminate

against [an] employee . . . because [she] has opposed any practice" made unlawful by Title VII

(called the opposition clause) or because she "has made a charge, testified, assisted or

participated in" a Title VII proceeding (called the participation clause).  *See King v. Jackson*, 487

F.3d 970, 972 (D.C. Cir. 2007) (quoting the retaliation provision in 42 U.S.C. § 2000e-3(a)(1)

and explaining that the federal government is subject to it).  Construing the facts in the light most

favorable to Plaintiff and assuming their truth for purposes of this Motion only, Plaintiff alleges

opposition activity beginning on June 25, 2010, Compl. ¶ 20, and participation conduct

beginning on March 16, 2011, *id.* ¶ 34.  As explained below, while Defendant does not challenge

Plaintiff's participation activity for purposes of this Motion, Plaintiff's opposition activity is not

sufficient to state a retaliation claim.  Thus, all allegedly retaliatory actions that pre-date March

16, 2011, should be dismissed as a matter of law.

"[A]n employee seeking the protection of the opposition clause [must] demonstrate a

good faith, reasonable belief that the challenged practice violates Title VII."  *Parker v. Balt. &*

18

*Ohio R.R. Co.*, 652 F.2d 1012, 1020 (D.C. Cir. 1981).  Courts have concluded that when an employee opposes conduct that does not fall within Title VII, such opposition is not sufficient to support a retaliation claim.  *See King v. Jackson*, 468 F. Supp. 2d 33, 38 (D.D.C. 2006) (explaining that opposition conduct is not sufficient to state a retaliation claim when it consists of challenging an employer's practice that is not listed as an "unlawful employment practice" under Title VII); *Logan v. Dep't of Veterans Affairs*, 404 F. Supp. 2d 72, 76 (D.D.C. 2005) (opposition conduct that did not include a claim based upon "race, color, religion, sex, or national origin" not protected); *Jones v. Billington*, 12 F. Supp. 2d 1, 13 (D.D.C. 1997) (Kollar-Kotelly, J.) (finding that grievance was not protected activity because the plaintiff "fail[ed] to allege any discrimination based on race, color, religion, sex, or national origin").

As discussed above, Plaintiff has failed to put forth any factual allegations that would support his claim of discrimination on the basis of sex or religion and instead has alleged sexual orientation discrimination, which courts have held is not protected by Title VII.  Consequently, Plaintiff's retaliation claim also fails.  *See Larson v. United Air Lines*, No. 11-1313, 2012 U.S. App. LEXIS 11066, at *16-17 (10th Cir. June 1, 2012) (dismissing retaliation claim where Plaintiff failed to establish that he was opposing conduct that violated Title VII); *Prowel*, 579 F.3d at 293 (same); *Hamm*, 332 F.3d at 1066 (same).  Under this case law, none of the allegations in the Complaint that pre-date March 16, 2011, the date that Plaintiff alleges he engaged in participation activity, can form the basis of a retaliatory harassment claim and should be dismissed.

## III.   PLAINTIFF'S COMPLAINT DOES NOT STATE A CLAIM FOR RETALIATORY HARASSMENT UNDER THE PARTICIPATION CLAUSE.

According to his Complaint, Plaintiff first contacted the Library's OIC Director on March

19

16, 2011, to discuss his discrimination claims.  Compl. ¶ 34.  Title VII's participation clause

makes it unlawful for an employer to retaliate against an employee because he "participated in

any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C.

§ 2000e-3.  "Once plaintiff, acting for himself or a representative, initiates pre-complaint contact

with an EEO counselor . . . he is participating in a Title VII proceeding."  *Gonzalez v. Bolger*,

486 F. Supp. 595, 601 (D.D.C. 1980), *aff'd*, 656 F.2d 899 (D.C. Cir. 1981).  Assuming, for

purposes of this Motion only, that Plaintiff was counseled by the OIC Director on March 16,

2011, and that Plaintiff's participation in an EEO proceeding following his contact is protected

by Title VII, the post-March 16, 2011, acts alleged in the Complaint fail to state a claim for

retaliatory harassment.[6]

A retaliatory hostile work environment claim requires more than allegations that a

particular plaintiff found a workplace stressful or difficult.  To prevail on such a claim, [plaintiff]

---

[6]  For purposes of this Motion, the Library must accept TerVeer's allegation that he contacted the OIC Director on March 16, 2011, to complain about discrimination on the basis of sex stereotyping and religion, *see* Compl. ¶ 34, and thus must accept at this time that he raised these allegedly discriminatory acts with the OIC office, as is required.  *See* Ex. C, LCR 2010-3.1, §§ 4A, 6B.  It is notable, however, that Plaintiff's informal written complaint, lodged on September 28, 2011, would not satisfy this exhaustion requirement because it raises entirely different allegations than those raised before this Court.  In his informal complaint, he alleges that his supervisor began to harass him after two female employees started working in his office, showed favoritism toward (these) women, and harassed other women.  *See* Ex. A, Sept. 28, 2011 EEO Complaint.  There is no mention of religious discrimination or sex stereotyping arising out of Plaintiff's sexual orientation, which are the claims he raises in his federal court complaint.  This informal complaint thus would not be enough to satisfy the requirement that a plaintiff first raise allegations of discrimination with the agency's EEO office.  *See, e.g., Baker*, 260 F. Supp. 2d at 64 (dismissing claims for failing to first raise them with the Library's EEO office).  It is further notable that Plaintiff's informal complaint, prepared with the assistance of counsel, attributes Mech's alleged change in attitude not to Mech learning of Plaintiff's sexual orientation, but to the arrival, in his office, of two female employees.  These allegations call into question the allegations he has made in his district court complaint.

must show that the [defendant] subjected him to 'discriminatory intimidation, ridicule, and insult' of such 'sever[ity] or pervasive[ness] [as] to alter the conditions of [his] employment and create an abusive working environment.'"  *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)).

Plaintiff makes three particular allegations regarding his work environment that occurred after March 16, 2011, and before he left the office on extended leave on October 12, 2011:  That Mech pushed him to disclose his plans to appeal his denial of a within-grade increase in front of coworkers sometime after June 24, 2011, Compl. ¶ 37, that Mech and Christopher "criticized and penalized" him for spending time on his administrative complaint during the workday, *id.* ¶ 41, and that Christopher allegedly filmed him at a location outside the workplace, *id.* ¶ 43.

Taken together, these allegations are not severe or pervasive enough to constitute a hostile work environment.  First, as supervisors, Mech and Christopher were expected to monitor and direct Plaintiff's performance during the workday---including the tasks that he spent time on during his workday.  *Graham*, 657 F. Supp. 2d at 217 ("Being subjected to 'scrupulous monitoring' does not support a claim for hostile work environment because 'it is part of the employer's job to ensure that employees are safely and properly carrying out their jobs.'").  Second, that Plaintiff felt embarrassed in front of his coworkers at a single meeting hardly meets the standard for a hostile work environment.  *Hussain*, 435 F.3d at 366-67 (holding that although the plaintiff's work environment "was hardly ideal," no reasonable jury could conclude that the actions complained of, which included denying him promotion, denying him medical leave, poor performance evaluations and stating threats of termination, constituted a hostile work environment).

21

Moreover, the three-month gap between Plaintiff's alleged meeting with the OIC and the alleged meeting in June defeats any inference of retaliatory intent. *Buggs v. Powell*, 293 F. Supp. 2d 135, 148 (D.D.C. 2003) (holding that the time lapse must be less than three months to establish a causal connection). Finally, Plaintiff cannot demonstrate that a single incident taking place outside of the workplace (even assuming the truth of those allegations at this stage) can alter the conditions of his employment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993) (workplace conditions must be so suffused with "discriminatory intimidation, ridicule, and insult" of such severity or persuasiveness as to alter the terms and conditions of employment). Therefore, even assuming that Plaintiff contacted the Library's OIC on March 16, 2011, and that Plaintiff's retaliation claims after March 16, 2011, are protected by the participation clause of § 2000e-3, he has not stated a claim for retaliatory hostile work environment. Count III should be dismissed.

## IV.    PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE PRECLUDED BY TITLE VII.

In Counts IV and V, Plaintiff alleges that the Library violated his constitutional rights by engaging in impermissible sexual orientation discrimination. Compl. ¶ 94. As a federal employee, however, Plaintiff does not have the right to repackage his Title VII claim into companion constitutional claims. Rather, the exclusive judicial remedy for these claims is Title VII. As the Supreme Court has held, "the established principle leads unerringly to the conclusion that Section 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. GSA,* 425 U.S. 820, 835 (1976).

Following *Brown*, the D.C. Circuit has expressly held that "federal employees cannot assert additional or alternative claims predicated directly upon the Constitution, but must use Title VII as the sole means of litigating their grievances." *Wagner v. Taylor*, 836 F.2d 566, 576-77 n.76 (D.C. Cir. 1993); *Ethnic Emps. of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1414-15 (D.C. Cir. 1985) ("Allowing federal employees to recast their Title VII claims as constitutional claims would clearly threaten the [legislative] policies [underlying Title VII].");  *Kizas v. Webster*, 707 F.2d 524, 543 (D.C. Cir. 1983) (holding that Title VII is the exclusive means for bringing an employment discrimination claim).  *See generally Elgin v. Dep't of Treasury,* 132 S. Ct. 2126, 2140 (2012) (explaining that covered federal employees could not bring constitutional claim related to their employment outside of the scheme set out in the Civil Service Reform Act); *Davis v. Billington*, 681 F.3d 377, 384-86 (D.C. Cir. 2012) (holding that the Civil Service Reform Act is a comprehensive remedial scheme that precluded a *Bivens* action by a Library of Congress employee, even though the plaintiff could not obtain relief under the Act).  Plaintiff himself admits that "Title VII is the exclusive remedy for a federal employee's claim of employment discrimination."  Compl. ¶ 95.

That Title VII provides the exclusive remedy for claims of federal employment discrimination remains true even if Title VII does not provide a remedy for a particular claim. The exclusive, preemptive effect of Title VII established by *Brown* bars Plaintiff's putative constitutional claims irrespective of whether the remedial limitations of Title VII preclude Plaintiff's claims.  Title VII is a comprehensive remedial scheme even though it may not remedy every conceivable type of discrimination. *See, e.g., Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (noting that "[t]he absence of statutory relief for a constitutional violation . . . does not by

23

any means necessarily imply that courts should award damages against the officers responsible

for that violation."); *see also Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988) (holding

that "courts . . . must withhold their power to fashion damages remedies when Congress has put

in place a comprehensive system to administer public rights, has not inadvertently omitted

damages remedies for certain claimants, and has not plainly expressed an intention that the

courts preserve *Bivens* remedies.") (citations and internal quotation marks omitted).

      Furthermore, Plaintiff cannot assert a claim for monetary damages under the

Constitution, as there has been no waiver of sovereign immunity. *See, e.g., FDIC v. Meyer*, 510

U.S. 471, 475 (1994).  Thus, because Congress has put in place a comprehensive remedial

scheme (Title VII), and has not plainly expressed an intention that the courts preserve

constitutional remedies for Plaintiff's discrimination claims, Plaintiff's constitutional claims in

Count IV and Count V of his Complaint should be dismissed.

      Although courts have held that *Congress* has not authorized Plaintiff's claims of sexual

orientation discrimination in federal employment, the *Library*, like many other federal agencies,

has established a fulsome administrative process for its employees to pursue claims of sexual

orientation discrimination.  *See* Ex. H, Library of Congress Prevention of Harassment and

Retaliation Policy, Special Announcement 11-02 (Jan. 25, 2011).  Under this policy, a Library

employee who believes he or she has been harassed on the basis of, among other things, sexual

orientation or sexual identity, may pursue dispute resolution through the Library's Dispute

Resolution Center or may pursue a remedy through one of the Library's grievance procedures,

set forth in LCR 2020-2 (attached as Ex. I).  *See id.*  The latter procedure allows an employee to

request a formal hearing with an impartial hearing officer, and to call and cross-examine

24

witnesses.  *See* Ex. I, LCR 2020-2, § 11 & Attachment C.  These procedures are in addition to

the Library's administrative EEO process, which allows employees to pursue claims of

discrimination based on race, color, religion, sex, national origin, age, physical or mental

handicap, or sexual harassment.  *See* Ex. C, LCR 2010-3.1.

In addition, an employee like Plaintiff, who believes that he has been subject to an

adverse action (such as a suspension or termination) may pursue an administrative appeal of that

decision.  *See* Ex. E, LCR 2020-3.1.  The administrative appeal procedure provides for several

layers of review within the Library, and, if requested, a formal hearing overseen by an impartial

hearing officer, with the opportunity to call and cross-examine witnesses.  *See id.*  In this case,

Plaintiff availed himself of the Library's EEO process as well as its Adverse Action appeals

process under LCR 2020-3.1 and thus while Plaintiff's Complaint here should be dismissed,

Plaintiff was not left without a remedy.

## V.     PLAINTIFF'S CLAIMS UNDER THE LIBRARY OF CONGRESS ACT AND LIBRARY REGULATIONS AND POLICIES SHOULD BE DISMISSED ON SOVEREIGN IMMUNITY GROUNDS.

In Count VI, Plaintiff alleges that the Library violated the Library of Congress Act, 2

U.S.C. § 140, because he "was entitled to have decisions related to his employment considered

"solely with reference to [his] fitness for [the] particular duties,"[7] Compl. ¶ 100, and in Count

---

[7] It bears noting that Plaintiff selectively quotes the text of the Library of Congress Act to suggest that all employment decisions made by the Librarian are governed by 2 U.S.C. § 140. Compl. ¶ 100.  This is incorrect.  The one-sentence statute is limited exclusively to the criteria the Librarian must consider when making *appointments*.  The statute states in its entirety: "All persons employed in or about said Library of Congress under the Librarian shall be appointed solely with reference to their fitness for the particular duties."  2 U.S.C. § 140.  In the instant matter, Plaintiff has not alleged any impropriety on the part of the Library associated with his *appointment* to the Library.  Thus, this statute simply has no relevance to his allegations.

VII, Plaintiff alleges that the Library violated its policies prohibiting harassment and discrimination, Compl. ¶¶ 105-08.  Plaintiff, however, points to no waiver of sovereign immunity that would allow him to bring these claims against the Library, and there is no such waiver.  *See United States v. Nordic Village, Inc*., 503 U.S. 30, 33-34, 37 (1992) (explaining that a waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and cannot be implied); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (same); *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986) (explaining that a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the Government); *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981) (same).

Notably, the actions by the Library of Congress are not reviewable under the Administrative Procedure Act ("APA").  The judicial review provisions of the APA only permit review of actions taken by an "agency" as defined in §§ 551(1) and 701(b) of the statute.  *See* 5 U.S.C. §§ 551(1), 701(b).  The statutory definition of "agency" specifically excludes Congress. *Id.*  For purposes of the judicial review provisions of the APA, the Librarian of Congress is considered part of Congress and thus outside the scope of the APA.  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 145 (1980) (finding that the Library of Congress is not an agency for purposes of § 551(1)(a)); *see also Ethnic Emps.*, 751 F.2d at 1416 n.15. Because Plaintiff has not alleged any waiver of sovereign immunity for Counts VI and VII, and because there is no waiver, the Court should dismiss these Counts for lack of subject matter jurisdiction.

WHEREFORE, the Court should grant Defendant's motion and dismiss the Complaint in its entirety.

Respectfully submitted,

RONALD C. MACHEN JR, DC Bar # 447889
United States Attorney for the District of
   Columbia

DANIEL F. VAN HORN, DC Bar # 924092
Chief, Civil Division

By: _____/s/_____
JOHN G. INTERRANTE
PA Bar # 61373
Senior Litigation Counsel
Civil Division
555 4th Street, NW, Room E-4808
Washington, DC  20530
Tel:    202.514.7220
Fax:    202.514.8780
Email: John.Interrante@usdoj.gov


Of counsel:

Julia O'Brien
Office of the General Counsel
Library of Congress
101 Independence Ave., S.E., Room LM601
Washington, D.C.  20540-1050

27