# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PETER J. TERVEER,

    Plaintiff,

      v.

JAMES H. BILLINGTON, Librarian,
Library of Congress

    Defendant.

**Civil Action No. 12-1290 (CKK)**

## MEMORANDUM OPINION
### (March 31, 2014)

Plaintiff Peter J. Terveer filed suit on March 7, 2013, against his employer, Defendant James H. Billington, Librarian for the Library of Congress, alleging Defendant created a hostile work environment, denied him a within grade salary increase, and constructively discharged him on the basis of sex and religion and in retaliation for his protected activities in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq. See* Pl.'s Am. Compl. ¶¶ 55-87, ECF No. [26]. Plaintiff also alleges an independent claim of constructive discharge. *Id.* ¶¶ 88-92. In addition, Plaintiff alleges that Defendant's discriminatory acts violated his rights under the Due Process and Equal Protection clauses of the Fifth Amendment, the Library of Congress Act, 2 U.S.C. § 140, and various Library of Congress policies and regulations prohibiting harassment and retaliation based on religion and sexual orientation. *See id.* ¶¶ 93-114. Presently before the Court is Defendant's Motion to Dismiss all eight counts of Plaintiff's Complaint. *See* Def.'s Mot. to Dismiss, ECF No. [27]. Upon consideration of the pleadings,[1] the relevant legal

---

[1] Defendant's Motion to Dismiss ("Def.'s Mot."), ECF No. [27]; Plaintiff's Opposition to

authorities, and the record for purposes of a motion to dismiss, the Court finds that Plaintiff has sufficiently pled sex discrimination, religious discrimination, and retaliation claims under Title VII. However, to the extent Plaintiff's claims are based on his constructive discharge, they must be dismissed because Plaintiff failed to exhaust these claims. By contrast, the Court finds that Defendant has waived any exhaustion defense as to Plaintiff's discrimination and retaliation claims based on the denial of his within-grade salary increase. Finally, as Title VII is the exclusive remedy for federal government employees' claims of employment discrimination and the Court finds on the present record that Plaintiff has pled claims cognizable under Title VII, the Court dismisses without prejudice Plaintiff's constitutional claims, as well as Plaintiff's claims under the Library of Congress Act and Library of Congress policies and regulations. Accordingly, for the reasons stated below, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### A.    *Factual Background*

For the purposes of Defendant's Motion to Dismiss, the Court presumes the following facts pled in Plaintiffs' Amended Complaint to be true, as required when considering a motion to dismiss. In February 2008, Plaintiff was hired as a Management Analyst in the Auditing Division of the Library of Congress Office of the Inspector General ("OIG"). *Id.* ¶ 1. Plaintiff's first-level supervisor was John Mech ("Mech"), a religious man who was accustomed to making his faith known in the workplace. *Id.* ¶¶ 1, 8. On June 24, 2009, Mech told Plaintiff that "putting you . . . closer to God is my effort to encourage you to save your worldly behind." *Id.* ¶

Defendant's Motion to Dismiss ("Pl.'s Opp'n."), ECF No. [28]; Defendant's Reply in Support of Defendant's Motion to Dismiss ("Def.'s Reply), ECF No. [32]; Amicus Brief by Lambda Legal Defense & Education Fund, ECF No. [29].

8. Plaintiff became close with Mech and Mech's family, including his daughter. *Id.* ¶¶ 9-10. In August 2009, Mech's daughter learned that Plaintiff is homosexual. *Id.* ¶¶ 10-11. Shortly thereafter, Plaintiff received an email from Mech mentioning his daughter and containing photographs of assault weapons along with the tagline "Diversity: Let's Celebrate It." *Id.* ¶ 12. Mech also began engaging in religious lectures "at the beginning of almost every work-related conversation" "to the point where it became clear that Mech was targeting [Plaintiff] by imposing his conservative Catholic beliefs on [Plaintiff] throughout the workday." *Id.* Plaintiff further alleges that after learning that Plaintiff was homosexual, Mech no longer gave Plaintiff detailed instructions for assignments, but would instead give Plaintiff ambiguous instructions without clear communication of what Mech or OIG management expected. *Id.* ¶ 13. In December 2009, Mech began assigning Plaintiff assignments related to a large audit project that Plaintiff alleges were beyond his experience level. *Id.* ¶ 16. Normally, Plaintiff alleges, a project of such size and complexity would be staffed with six employees, take more than a year to complete, and be initiated by a New Project Memorandum. *Id.* Instead, Mech held a brief meeting to discuss the format of the project and assigned Plaintiff as the sole employee on the project. *Id.* Mech also began assigning Plaintiff more work in addition to the audit project. *Id.* ¶ 17.

On June 21, 2010, Mech called an unscheduled meeting, lasting more than an hour, for the stated purpose of "educating [Plaintiff] on Hell and that it is a sin to be a homosexual . . . [, that] homosexuality was wrong[,] and that [Plaintiff] would be going to Hell." *Id.* ¶ 18. Mech began reciting Bible verses to Plaintiff and told Plaintiff "I hope you repent because the Bible is very clear about what God does to homosexuals." *Id.* Four days later, on June 25, 2010, Plaintiff received his annual review from Mech. *Id.* ¶ 20. Plaintiff found the review did not

accurately reflect the quality of his work and believed the review was motivated by Mech's religious beliefs and sexual stereotyping. *Id.* That day, Plaintiff confronted Mech regarding the purpose of his religious lecturing and "the unfair treatment that began after Mech learned [Plaintiff] was homosexual." *Id.* Mech was greatly angered by Plaintiff's questioning, vehemently denied that Plaintiff's homosexuality and personal religious views had impacted his impartiality with regard to Plaintiff's work and performance, and accused Plaintiff of trying to "bring down the library." *Id.* ¶ 21.

On June 29, 2010, Plaintiff met with Nicholas Christopher ("Christopher"), Mech's immediate supervisor, and told Christopher that "Mech had been lecturing him about religion and that he believed he was the victim of discrimination in the workplace because his sexual orientation did not conform to Mr. Mech's religious beliefs." *Id.* ¶ 24. Christopher told Plaintiff that, in his opinion, employees do not have rights. *Id.* ¶ 25. Christopher did not take any remedial action, did not contact the Library's Equal Employment Opportunity Office—the Office of Opportunity Inclusiveness and Compliance ("OIC")—and did not advise Plaintiff of appropriate complaint procedures. *Id.*

Plaintiff alleges that in response to his allegations of discrimination, Mech placed Plaintiff directly under his supervision for the audit project and informed Plaintiff that he would be subjected to heightened scrutiny. *Id.* ¶ 26. Mech also began verbally assaulting Plaintiff whenever Plaintiff sought clarification on his work assignments. *Id.* In December 2010, Mech prepared an evaluation of the audit project, which Plaintiff alleges broke with standard operating procedure because the project was not complete. *Id.* ¶ 27. Mech's review of the project was "extremely negative in every category." *Id.* Plaintiff discussed the review with Mech and asked Mech if he continued to refuse to accept Plaintiff's homosexuality. *Id.* In response, Plaintiff

alleges Mech stated: "I don't care, I had a conversation with you—that is my business—but this has put you in a position where you are under a closer watch, and you are not to question me— this is how it is. Regardless, you do not question management." *Id.* Plaintiff further alleges that Mech stated that he was "damn angry" at Plaintiff for threatening to bring a claim for wrongful discrimination and harassment and said to Plaintiff: "You were going to string me out to dry, made accusations, put me in a position risked (sic) my job and position, and now this is the result. You are to do as you are told and not question me or management in this office. You do not have rights, this is a dictatorship." *Id.*

In February 2011, Mech issued another negative performance evaluation based upon allegedly incorrect facts and mischaracterizations. *Id.* ¶ 29. On March 9, 2011, Mech notified Plaintiff that he was being placed on a "90-day written warning." *Id.* ¶ 31. A negative report following the review period would result in a denial of Plaintiff's level GS-11 within-grade-increase. *Id.* On March 16, 2011, Plaintiff met with Naomi Earp ("Earp"), Director of the OIC, and initiated the Equal Employment Opportunity ("EEO") complaint process. *Id.* ¶ 34. Earp, who was familiar with Plaintiff's work, believed Plaintiff would benefit from a transfer from his current office, OIG, to the OIC. *Id.* ¶ 35. Earp asked Christopher if OIG would approve the transfer, but Christopher responded that Plaintiff was on track to be terminated within six months and that he would not approve the transfer. *Id.* Plaintiff does not now claim this denial of transfer as an adverse employment action. *See* Pl.'s Opp'n. at 14 n.1.

On June 24, 2011, Mech submitted his report following the 90-day written warning period finding Plaintiff's work to be only minimally successful and denied his within-grade-increase. *Id.* ¶ 36. Plaintiff informed Christopher, who in turn informed Mech, that Plaintiff was intending to appeal Mech's denial of his within-grade-increase. *Id.* ¶ 37. Shortly thereafter,

Mech convened a meeting with Plaintiff and his co-workers and demanded that Plaintiff disclose to his co-workers that he intended to appeal the denial of his within-grade-increase, subjecting Plaintiff to a "hostile and abusive interrogation" until Plaintiff disclosed the details regarding his intent to appeal. *Id.* Plaintiff's appeal of the denial of his within-grade-increase was subsequently denied by Christopher on July 21, 2011. *Id.* ¶ 38; Def.'s Ex. B (Plaintiff's Formal Complaint of Discrimination), at 10.

Plaintiff alleges that the stress of his work environment caused him to require medical assistance and counseling. *Id.* ¶ 39. Plaintiff took paid sick leave from August 19, 2011, to September 23, 2011. *Id.* On September 28, 2011, upon returning to work, Plaintiff filed an informal complaint of discrimination with the OIC Office. *Id.* ¶ 40. On Plaintiff's informal complaint, Plaintiff marked "sex" and "reprisal" as the basis of the alleged discrimination. Def.'s Ex. A (Plaintiff's Informal Complaint of Discrimination). Plaintiff alleges that following the filing of his discrimination complaint, Mech and Christopher prevented Plaintiff's access to documents and other data, and continued to "harass, intimidate, and retaliate" against Plaintiff. *Id.* ¶ 41. Specifically, Plaintiff was criticized and penalized at work for taking time to prosecute his administrative action. *Id.* Christopher also demanded that Plaintiff request permission from the supervisors against whom he had filed his complaint before working on his administrative action during the workday. *Id.* ¶ 42. In addition, Plaintiff alleges that "on numerous occasions, Christopher followed and/or filmed [Plaintiff] while he was off-duty and away from the [Library of Congress]." *Id.* ¶ 43.

On October 12, 2011, Plaintiff took additional leave to continue medical treatment "to deal with the emotional stress created by Mech and Christopher's discriminatory treatment." *Id.* ¶ 44. Plaintiff filed his formal complaint alleging discrimination with the OIC on November 9,

2011. *Id.* ¶ 47. Plaintiff's formal complaint alleged discrimination based on religion, sex, sexual harassment, and reprisal. Def.'s Ex. B (Plaintiff's Formal Complaint of Discrimination). Plaintiff qualified for Family Medical Leave from October 12, 2011, to January 3, 2012. *Id.* ¶¶ 44, 48. Shortly after January 3, 2012, Plaintiff received a letter from Christopher declaring Plaintiff to be Absent Without Leave from work and directing him to return to duty. *Id.* ¶ 48. Christopher's letter stated: ". . . regardless of any health-related issue that you may be experiencing, your prolonged absence has had a negative impact on the Office of Inspector General . . . . Therefore, you are directed to immediately report for duty or contact me immediately to discuss your return to duty status. You are also advised that any further request for LWOP (leave without pay) will not be considered at this time." *Id.* ¶ 48. Plaintiff responded to Christopher that he would follow up with his doctors regarding his medical status. *Id.* ¶ 49. On March 29, 2012, Library of Congress Inspector General Karl Schornagel informed Plaintiff that he was considered Absent Without Leave and would be terminated from the Library of Congress on April 6, 2012, due to his failure to return to duty. *Id.* ¶ 51. Plaintiff alleges he was constructively terminated on April 4, 2012, because he was unable to return to a workplace where he had to confront constant discriminatory treatment from Mech and Christopher. *Id.* ¶ 54. On April 5, 2012, Plaintiff appealed through the Library of Congress's Adverse Actions appeals process Defendant's decision to terminate him. *Id.* ¶ 52. Plaintiff, however, does not now plead his actual termination by Defendant as an adverse employment action under Title VII, only his constructive termination. *See* Pl.'s Opp'n. at 18 n.5.

### B. *Procedural Background*

On May 8, 2012, the Library of Congress issued its final agency decision denying Plaintiff's claims of discrimination. *Id.* ¶ 53. On August 3, 2012, Plaintiff filed the present

lawsuit alleging eight counts against Defendant. Counts I through III allege, respectively, that Defendant violated Title VII by discriminating against Plaintiff based on sex, religion, and in retaliation for Plaintiff's protected activities. Specifically, Plaintiff alleges that Defendant subjected him to "harsh and discriminatory working conditions" and "constructively terminated" him from his position because Plaintiff, "as a homosexual male[,] did not conform to the Defendant's gender stereotypes associated with men under Mech's supervision or at the LOC." *Id.* ¶¶ 57-59. In Count II, Plaintiff's religious discrimination claim, Plaintiff alleges that Defendant subjected him to "harsh and discriminatory working conditions" and "constructively terminated" him from his position by discriminating against him for holding "religious beliefs that could not be reconciled with [Mech's] fundamentalist religious beliefs that refuse to embrace LGBT individuals." *Id.* ¶¶ 65-66, 68. Finally, in Count III, Plaintiff alleges that he was constructively terminated and subjected to a hostile work environment in retaliation for confronting Mech about discriminating against him "based upon his sexual orientation and religious beliefs." *Id.* ¶¶ 72, 84. Plaintiff also pleads an independent claim of constructive discharge (Count IV). *Id.* ¶¶ 88-92.

Counts V and VI present constitutional claims. In Count V, Plaintiff alleges that Defendant violated the Fifth Amendment's Due Process clause by "purposefully and intentionally discriminating against [Plaintiff]" because of Defendant's "prejudice towards homosexuals and/or persons whom do not conform to sex stereotypes recognized by the Defendant." *Id.* ¶ 96. Count VI, which Plaintiff pleads as an alternative to his Title VII sex discrimination claim, alleges that Defendant "engaged in impermissible sex discrimination in violation of the equal protection component of the Fifth Amendment's Due Process Clause." *Id.* ¶ 99. Specifically, Plaintiff alleges that Defendant "intentionally discriminated against [him]

because his identity as a homosexual male represents a departure from sex stereotypes recognized by the Defendant." *Id.* ¶ 101.

Plaintiffs' last two counts allege violations of the Library of Congress Act and Library of Congress policies and regulations. In Count VII, Plaintiff alleges that Defendant violated the Library of Congress Act, 2 U.S.C. § 140, because under the Act, Plaintiff was "entitled to have decisions related to his employment considered 'solely with reference to [his] fitness for [the] particular duties' of the Management Analyst position" yet Plaintiff was terminated from his employment "for reasons wholly unrelated to his fitness for the particular duties of the Management Analyst position." *Id.* ¶¶ 105, 107. In Count VIII, Plaintiff alleges that Defendant violated Library of Congress Special Announcements 10-5 and 11-02 and Library of Congress Regulations LCR 2010-2, 2023-1, and 2023-2 by precluding Plaintiff from "a work environment free from harassment of any kind, including harassment on the basis of religion or sexual orientation." *Id.* ¶ 111.

Defendant now moves the Court to dismiss all eight Counts of Plaintiff's Complaint. First, Defendant argues that to the extent Plaintiff's claims are based on his constructive discharge and the denial of his within-grade salary increase, these claims should be dismissed because Plaintiff failed to timely exhaust his administrative remedies as to these discrete employment actions. Second, Defendant contends that Plaintiff's sex and religious discrimination and retaliation claims under Title VII should be dismissed for failure to state a claim. Third, Defendant moves the Court to dismiss Plaintiff's constitutional claims because they are preempted by Title VII. Lastly, Defendant contends that Plaintiff cannot sue the Library of Congress for violations of the Library of Congress Act or the Library's internal policies or regulations because there is no express waiver of sovereign immunity for such claims.

## II.  LEGAL STANDARD

### A.  Dismissal for Failure to Exhaust Administrative Remedies

Defendant moves under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction Plaintiff's constructive discharge and denial of promotion claims.  However, "'[m]otions to dismiss for failure to exhaust administrative remedies are . . . appropriately analyzed under Rule 12(b)(6)'" for failure to state a claim for which relief can be granted.  *Hairston v. Tapella,* 664 F.Supp.2d 106, 110 (D.D.C. 2009) (quoting *Hopkins v. Whipple,* 630 F.Supp.2d 33, 40 (D.D.C. 2009)); *see also Arbaugh v. Y & H Corp.,* 546 U.S. 500, 516 (2006) ("[W]hen Congress does not rank a statutory limitation on [the statute's] coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character."); *Douglas v. Donovan,* 559 F.3d 549, 556 n. 4 (D.C. Cir. 2009) ("[T]he exhaustion requirement [under Title VII] though mandatory, is not jurisdictional[.]").  In deciding a motion brought under Rule 12(b)(6),

> a court does not consider matters outside the pleadings, but a court may consider on a motion to dismiss the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.

*Ward v. D.C. Dep't of Youth Rehab. Serv's.,* 768 F.Supp.2d 117, 119 (internal quotations and citations omitted).  As Plaintiff's Complaint references the informal complaint of discrimination Plaintiff submitted on September 28, 2011, the formal complaint he made on November 9, 2011, and the final agency decision, and Defendant has attached each of these documents to its Motion to Dismiss, the Court shall consider these documents in analyzing whether Plaintiff has timely exhausted his claims of discrimination.

### B.  Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the

sufficiency of a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

Plaintiff's Title VII sex and religious discrimination and retaliation claims each allege that Defendant subjected Plaintiff to a hostile work environment and constructively discharged Plaintiff for discriminatory or retaliatory reasons. Plaintiff also pleads an independent count of constructive discharge. In its Motion to Dismiss, Defendant contends that Plaintiff's constructive discharge claims must be dismissed because Plaintiff has failed to exhaust these claims through the Library's EEO process.[2] Defendant also argues that Plaintiff failed to exhaust his claim that he was denied a promotion in the form of a within-grade salary increase based on discrimination and/or retaliation.[3]

---

[2] Defendant also argues that Plaintiff cannot state a claim for constructive discharge because he was *actually* terminated and did not resign or retire. Def.'s Mot. at 9-11. The Court need not address this argument as the Court finds that even if Plaintiff properly stated a claim of constructive discharge, Plaintiff did not exhaust that claim and, accordingly, it must be dismissed.

[3] The Court notes that Plaintiff only discusses the denial of his within-grade-increase in the fact section of his Complaint. Plaintiff does not identify the denial of his within-grade-

Federal employees may file a civil action only after exhausting their administrative remedies before the concerned federal agency. 42 U.S.C. § 2000e–16(c). Under rulemaking authority delegated by Title VII, *see* 42 U.S.C. § 2000e–16(b), the Librarian of Congress exercises authority granted to the Equal Employment Opportunity Commission. In accordance with that statute, the Library of Congress promulgated Library of Congress Regulation ("LCR") 2010–3.1 on April 20, 1983—"Resolution of Problems, Complaints, and Charges of Discrimination in Library Employment and Staff Relations Under the Equal Employment Opportunity Program." Pursuant to Section 4(A) of LCR 2010–3.1 ("Precomplaint Procedures"), "[a] staff member, or qualified applicant, who believes that he/she has been, or is being, discriminated against, and who wishes to resolve the matter, shall notify and consult with a Counselor not later than 20 workdays after the date of the alleged discriminatory matter." *Id.*

Compliance with these procedures and time limits is mandatory. "Complainants must timely exhaust these administrative remedies before bringing their claims to court." *Bowden v. United States,* 106 F.3d 433, 437 (D.C. Cir. 1997); *Bayer v. Dep't of Treasury,* 956 F.2d 330, 332 (D.C. Cir. 1992); *Williams v. Munoz,* 106 F.Supp.2d 40, 42 (D.D.C. 2000) ("timely administrative charge is a prerequisite to initiation of a Title VII action"). "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the

---

increase as an adverse employment action under any of his counts of discrimination, even though he does specifically identify his constructive discharge as an adverse employment action. Defendant interprets Plaintiff's Complaint as alleging the denial of Plaintiff's within-grade-increase as a discriminatory and/or retaliatory adverse employment action. In his Opposition, Plaintiff appears to agree with this interpretation, arguing that the denial of his within-grade-increase satisfies the "adverse employment action" element of both a *prima facie* case of discrimination and retaliation. *See* Pl.'s Opp'n. at 29, 50. Accordingly, despite the lack of clarity in Plaintiff's Complaint, the Court shall also treat Plaintiff's Complaint as alleging the denial of Plaintiff's within-grade-increase as a discriminatory and/or retaliatory adverse employment action.

responsibility of pleading and proving it." *Bowden*, 106 F.3d at 437 (citing *Brown v. Marsh,* 777 F.2d 8, 13 (D.C. Cir. 1985)).  Importantly, however, the administrative deadlines imposed by this scheme are not jurisdictional in nature: "they function like a statute of limitations and like a statute of limitations, are subject to waiver, estoppel, and equitable tolling." *Marsh,* 777 F.2d at 14 (citations and internal quotation marks omitted).

The Court shall address Defendant's two exhaustion arguments in turn.

### i. Constructive Discharge

Plaintiff concedes that he did not contact the Library of Congress's OIC Office regarding his constructive discharge claim, nor did he seek to amend his November 9, 2011, formal administrative EEO complaint to include this claim.  Pl.'s Opp'n. at 15.  Plaintiff argues, however, that while the claims he may bring in a lawsuit before a federal court are limited to those claims asserted in his administrative complaint, courts have also allowed plaintiffs to present unexhausted claims that are "like or reasonably related to the allegations of the administrative EEO complaint and growing out of such allegations." *Ponce v. Billington*, 652 F.Supp.2d 71, 74 (D.D.C. 2009).  Plaintiff contends that his constructive discharge claim is reasonably related to his EEO complaint because the same facts that support his claims of sexual harassment and hostile work environment support his claim that he was constructively discharged due to intolerable working conditions.[4]  Plaintiff effectively urges the Court to piggy-back his constructive discharge claim onto his hostile work environment claim for which

---

[4] Plaintiff also seems to suggest that he exhausted his constructive discharge claim when he filed an Appeal of Adverse Action on April 5, 2012, as he was instructed he could do in the the March 29, 2012, correspondence from the Library of Congress informing him that he would be terminated on April 6, 2012.  *See* Pl.'s Opp'n. at 15-16.  However, Plaintiff's Appeal of Adverse Action appealed his actual termination, not his constructive discharge.

Plaintiff did satisfy exhaustion requirements. In the alternative, Plaintiff urges this Court to employ ancillary jurisdiction over his constructive discharge claim. Plaintiff contends that "ancillary claims that grow out of the original charge may be proper[ly] before the federal court where the charge was only filed for the initial claim." Pl.'s Opp'n. at 18. Plaintiff relies on *Gupta v. East Texas State University*, where the Fifth Circuit employed ancillary jurisdiction to provide a jurisdictional basis for Plaintiff's unexhausted retaliatory-discharge claim because it "gr[ew] out of an [earlier] administrative charge properly before the court." 654 F.2d 411, 414 (5th Cir. 1981).

In 2002, the Supreme Court in *National Railroad Passenger Corporation v. Morgan*, "rejected the so-called continuing violation doctrines that allowed plaintiffs to recover for discrete acts of discrimination or retaliation that had not been separately exhausted but were 'sufficiently related' to a properly exhausted claim." *Romero-Ostolaza v. Ridge*, 370 F.Supp.2d 139, 148 (D.D.C. 2005) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)). The *Morgan* Court was emphatic that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law," *Morgan,* 536 U.S. at 108 (citing *Mohasco Corp. v. Silver,* 447 U.S. 807, 826 (1980)), and that recovery was precluded "for discrete acts of discrimination or retaliation that occur outside the statutory time period," *id.* at 105. Since *Morgan*, courts in the District of Columbia Circuit have largely refused to take jurisdiction over unexhausted claims of discrete discriminatory acts, such as terminations that occur following the filing of an administrative charge.[5] *See, e.g., Coleman-Adebayo v. Leavitt,* 326 F.Supp.2d 132, 137-38 (D.D.C. 2004); *Romero-Ostolaza*, 370 F.Supp.2d

---

[5] The Court of Appeals for the District of Columbia Circuit, however, has declined to decide whether *Morgan* did in fact overtake the "reasonably related" line of cases. *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010).

at 149; *Payne v. Salazar*, 628 F.Supp.2d 42, 51 (D.D.C. 2009), *rev'd on other grounds*, 619 F.3d 56 (D.C. Cir. 2010).

> The key to determining whether a claim must meet the procedural hurdles of the exhaustion requirement itself, or whether it can piggy-back on another claim that has satisfied those requirements, is whether the claim is of a "discrete" act of discrimination or retaliation or, instead, of a hostile work environment. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are individual acts that "occur" at a fixed time . . . . Accordingly, plaintiffs alleging such discriminatory action must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others.

*Coleman-Adebayo,* 326 F.Supp.2d at 137-38 (quoting *Morgan,* 536 U.S. at 114). Indeed, courts in this Circuit have specifically rejected attempts, like Plaintiff's, to piggy-back termination claims that are the "culmination" of plaintiffs' properly exhausted hostile work environment or discrimination claims. *See Graham v. Gonzales*, 2005 WL 3276180, *5 (D.D.C. Sept. 30, 2005) (rejecting plaintiff's argument that the court had jurisdiction over his constructive discharge claims because they were the "culmination of, and part of, the continuing hostile work environment claim as to which [Plaintiff] did exhaust administrative remedies"); *Camp v. District of Columbia*, 2006 WL 667956, *8 (D.D.C. March 14, 2006) ("While her retaliatory termination claims may be the "culmination" of her sexual harassment/gender discrimination claims, pursuant to *Morgan,* Plaintiff is required to exhaust her administrative remedies for her termination/retaliation claim, which is a separate discrete act."). Accordingly, the Court finds that Plaintiff has failed to exhaust his constructive discharge claim and declines to take jurisdiction over this discrete claim of discrimination under either the "reasonably related to" line of cases or ancillary jurisdiction. Therefore, the Court grants Defendant's Motion to Dismiss Plaintiff's discrimination claims to the extent they are based on his alleged constructive discharge and Plaintiff's independent count of constructive discharge (Count IV).

### ii. Within-Grade-Increase

Defendant also argues that Plaintiff's allegation that he was discriminatorily denied a promotion in the form of a within-grade-increase was not timely exhausted and thus should be dismissed.[6] Mech denied Plaintiff's within-grade-increase on June 24, 2011. Am. Compl. ¶ 36. On June 30, 2011, Plaintiff asked Christopher to reconsider the evaluation which led to the denial of Plaintiff's within-grade-increase. *Id.* ¶ 38. On July 21, 2011, Christopher informed Plaintiff that he would not change Plaintiff's performance evaluation. Def.'s Ex. B (Plaintiff's Formal Complaint of Discrimination). Defendant argues that even assuming the time to contact the Library of Congress' OIC Office began on July 21, 2011, Plaintiff did not contact the OIC until September 28, 2011, several weeks after the 20-day deadline for notifying a counselor of a discriminatory matter. Accordingly, Defendant argues, Plaintiff's claims related to the denial of his within-grade-increase should be dismissed as untimely.

As the Court previously explained, if a plaintiff does not exhaust his administrative remedies before filing a lawsuit under Title VII, he is precluded from bringing suit in federal court. *See Bowden,* 106 F.3d at 437. Failure to exhaust is an affirmative defense and defendants bear the burden of pleading and proving it. *Id.* However, administrative deadlines are subject

---

[6] The Court notes that Plaintiff only discusses the denial of his within-grade-increase in the fact section of his Complaint. Plaintiff does not identify the denial of his within-grade-increase as an adverse employment action under any of his counts of discrimination, even though he does specifically identify his constructive discharge as an adverse employment action. Defendant interprets Plaintiff's Complaint as alleging the denial of Plaintiff's within-grade-increase as a discriminatory and/or retaliatory adverse employment action. In his Opposition, Plaintiff appears to agree with this interpretation, arguing that the denial of his within-grade-increase satisfies the "adverse employment action" element of both a *prima facie* case of discrimination and retaliation. *See* Pl.'s Opp'n. at 29, 50. Accordingly, despite the lack of clarity in Plaintiff's Complaint, the Court shall also treat Plaintiff's Complaint as alleging the denial of Plaintiff's within-grade-increase as a discriminatory and/or retaliatory adverse employment action.

"to waiver, estoppel, and equitable tolling." *Marsh,* 777 F.2d at 14 (citations omitted). If defendants meet their burden, plaintiffs bear the burden of pleading and proving facts supporting equitable avoidance of the defense. *Bowden*, 106 F.3d at 437.

Plaintiff's primary argument in response to Defendant's contentions is that he "followed all appropriate administrative procedures with regard to his discrimination claims." Pl.'s Opp'n. at 14. Plaintiff explains that he initiated the EEO process on March 16, 2011, by meeting with an EEO Counselor and that this meeting was timely as it was only eight days after the discriminatory event of Mech's issuance of the 90-day written warning informing Plaintiff that he would be denied his within-grade-increase if he received a negative review at the end of the 90-day period. Even if the Court were to very liberally interpret Plaintiff's Complaint and treat the date of the denial of Plaintiff's within-grade-increase as March 9, 2011—the date when Plaintiff received the 90-day written warning—Plaintiff provides no record and makes no allegation indicating that he discussed the (potential) denial of his within-grade-increase during his meeting with the EEO Counselor on March 16, 2011. Plaintiff only vaguely alleges in his Complaint that, during the meeting, he "detailed the discrimination he was enduring." Am. Compl. ¶ 34. The informal complaint Plaintiff submitted to the OIC Office on September 28, 2011, does, by contrast, clearly discuss the denial of Plaintiff's within-grade-increase. *See* Def.'s Ex. A (Plaintiff's Informal Complaint of Discrimination). This informal complaint, however, was submitted to the OIC Office well outside the twenty-day window for notifying the OIC Office of an alleged discriminatory event. Accordingly, there is nothing in the record before the Court indicating that Plaintiff discussed the allegedly discriminatory denial of his within-grade-increase earlier than September 28, 2011, making his exhaustion of this claim untimely.

As Plaintiff does not acknowledge that he failed to timely exhaust the denial of his

within-grade-increase, Plaintiff's Opposition is void of any argument supporting equitable avoidance of this specific untimeliness defense.[7]  However, in Plaintiff's discussion of his *constructive discharge* claim, Plaintiff notes that his "formal complaint does in fact discuss the facts surrounding the issue of failure to promote and provide a within-grade increase, . . . which is reflected in the LOC's Notice of Receipt and Acceptance of Formal Complaint of Discrimination ("LOC Receipt and Acceptance Notice"). The LOC's Receipt and Acceptance Notice does not state that any claims were rejected, and demonstrates that all of Plaintiff's claims were in fact accepted."  Pl.'s Opp'n. at 15.  Courts in this Circuit have held that "when a complaint has proceeded through administrative channels prior to arriving at the federal courthouse, and the agency has accepted, investigated and decided that complaint on its merits without raising the exhaustion issue, the exhaustion defense may be found to have been waived." *Johnson v. Billington*, 404 F.Supp.2d 157, 162 (D.D.C. 2005) (citing *Bowden,* 106 F.3d at 438–39); *see also Kriesch v. Johanns*, 486 F.Supp.2d 183, 187 (D.D.C. 2007) (finding waiver where USDA accepted for investigation, investigated fully, and decided on the merits all of Ms. Kriesch's EEO complaints and never raised untimeliness during the administrative process). "[W]hen an agency is able to investigate a case in a timely fashion, before evidence is stale or lost and before expectations about the consequences of the actions at issue are settled, '[the agency]

---

[7] It appears from Plaintiff's Opposition that he did not fully recognize that Defendant is challenging the timeliness of his administrative exhaustion of his within-grade-increase claim. In a footnote in his Opposition, Plaintiff states: "Defendant has not argued that Plaintiff failed (sic) exhaust administrative procedures with regard to his discrimination claims.  Defendant solely argued that Plaintiff failed to exhaust administrative procedures with regard to his claims of constructive termination and failure to transfer."  Pl.'s Opp'n. at 14 n.1. However, Defendant's memorandum supporting his Motion to Dismiss clearly includes a paragraph arguing that Plaintiff's "allegation that he was denied a promotion in the form of a within-grade-salary increase, Am. Compl. ¶ 36, was not timely exhausted and should be dismissed." Def.'s Mot. at 15. Therefore, Plaintiff was fully on notice of this particular exhaustion argument.

has no legitimate reason to complain about a judicial decision on the merits.'" *Johnson,* 404 F.Supp.2d at 162 (citing *Bowden,* 106 F.3d at 438–39). Here, the agency accepted Plaintiff's within-grade-increase claim despite its apparent untimeliness, and Defendant does not now argue that Plaintiff's claim was stale at the time the agency proceeded. *See* Def.'s Ex. D (Final Agency Decision). The Library fully investigated Plaintiff's within-grade-increase claim and has adjudicated the merits of the claim. Moreover, "litigation of this case on the merits [does not] unsettle expectations." *Id.* at 163.

Although Plaintiff's argument that Defendant accepted, investigated, and adjudicated Plaintiff's within-grade-increase claim is confusingly located within an argument regarding the exhaustion of an entirely different claim, at the motion to dismiss stage, the Court is inclined to liberally construe Plaintiff's pleadings—which are far from a model of clarity—and hold that Plaintiff has met his burden of pleading and proving facts supporting equitable avoidance of Defendant's untimeliness defense. Accordingly, the Court finds Defendant has waived its untimely exhaustion defense as to Plaintiff's within-grade-increase claim and denies Defendant's Motion to Dismiss Plaintiff's discrimination claims to the extent they are based on the denial of Plaintiff's within-grade-increase.

## B. *Failure to State a Claim*

Defendant's second overarching argument is that Plaintiff's three Title VII claims—sex discrimination, religious discrimination, and retaliation—should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court shall address each Title VII claim in turn.

### i. *Title VII: Sex Discrimination*

Defendant moves the Court to dismiss Plaintiff's sex discrimination claim because

Plaintiff has insufficiently pled that he was the victim of sex stereotyping, a form of sex discrimination recognized as cognizable under Title VII by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Defendant contends that "courts have generally required plaintiffs [alleging sex stereotyping] to set forth specific allegations regarding the particular ways in which an employee failed to conform to such stereotypes – and allegations to support the claim that this non-conformity negatively influenced the employer's decision." Def.'s Mot. at 18. Plaintiff's Complaint, Defendant argues, falls short of this pleading standard because it does not indicate that his "supervisor's conduct was motivated by judgments about plaintiff's behavior, demeanor or appearance, and there are no facts to support an allegation that the employer was motivated by his views about Plaintiff's conformity (or lack thereof) with sex stereotypes." *Id.* at 19.

Courts in this Circuit have emphasized that a plaintiff alleging employment discrimination faces a "relatively low hurdle at the motion to dismiss stage." *Jones v. Bernanke*, 685 F.Supp.2d 31, 40 (D.D.C. 2010); *see also Rouse v. Berry*, 680 F.Supp.2d 233, 236 (D.D.C. 2010) ("In the context of a fairly straightforward employment discrimination complaint, plaintiffs traditionally have not been subject to a heightened pleading standard."). Indeed, the Court of Appeals for the District of Columbia has held that to survive a motion to dismiss under Rule 12(b)(6), all a complaint need state is: 'I was turned down for a job because of my race.' *Potts v. Howard Univ. Hosp.,* 258 Fed.Appx. 346, 347 (D.C. Cir. 2007) (quoting *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1115 (D.C. Cir. 2000)).

Title VII prohibits an employer from discriminating "against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, allegations that an employer is discriminating against an employee based on the employee's non-conformity with

sex stereotypes are sufficient to establish a viable sex discrimination claim. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) ("we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group."). Here, Plaintiff has alleged that he is "a homosexual male whose sexual orientation is not consistent with the Defendant's perception of acceptable gender roles," Am. Compl. ¶ 55, that his "status as a homosexual male did not conform to the Defendant's gender stereotypes associated with men under Mech's supervision or at the LOC," *id.* ¶ 59, and that "his orientation as homosexual had removed him from Mech's preconceived definition of male," *id.* ¶ 13. As Plaintiff has alleged that Defendant denied him promotions and created a hostile work environment because of Plaintiff's nonconformity with male sex stereotypes, Plaintiff has met his burden of setting forth "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Federal Rule of Civil Procedure 8(a). Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's sex discrimination claim (Count I) for failure to state a claim.

### ii.        *Title VII: Religious Discrimination*

Defendant next argues that Plaintiff's religious discrimination claim must be dismissed because it is no more than a recasting of Plaintiff's sex discrimination claim. Defendant relies on *Prowel v. Wise Business Forms*, 579 F.3d 285 (3d Cir. 2009), in which the Third Circuit held that a plaintiff who alleged that he failed to conform to his employer's religious beliefs by virtue of his status as a gay man had not pled a religious discrimination claim because "he was harassed not 'because of religion,' but because of his sexual orientation." *Id.* at 293. Defendant contends that, likewise, the allegations in Plaintiff's Complaint only show a supervisor taking issue with Plaintiff's sexual orientation, not his religious beliefs. Def.'s Mot. at 19-20.

Plaintiff responds that he sufficiently pled a claim of religious discrimination because he alleged facts showing that he was discriminated against because he failed to live up to his supervisor's religious expectations. The Court agrees with Plaintiff. Title VII seeks to protect employees not only from discrimination on the basis of their religious beliefs, but also from forced religious conformity or adverse treatment because they do "not hold or follow [their] employer's religious beliefs." *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1038 (10th Cir. 1993); *see also Johnson v. Dong Moon Joo*, 2006 WL 627154, *22 (D.D.C. March 12, 2006) (following *Shapolia* analysis); *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997) (adopting *Shapolia* analysis and holding that plaintiff "need only show that her perceived religious shortcomings (her unwillingness to strive for salvation as Ives understood it, for example) played a motivating role in her discharge."). In order to establish a *prima facie* case in actions where the plaintiff claims that he was discriminated against because he did not share certain religious beliefs held by his supervisors, the plaintiff must show

> (1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) *some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs.*

*Shapolia*, 992 F.2d at 1038 (emphasis added). In light of the "low hurdle" a plaintiff alleging employment discrimination must overcome at the motion to dismiss stage, the Court finds that Plaintiff has alleged sufficient facts to establish a claim of religious discrimination for failure to follow his employer's religious beliefs. In his Complaint, Plaintiff alleges that prior to learning of Plaintiff's sexual orientation, Mech told Plaintiff that "putting you . . . closer to God is my effort to encourage you to save your worldly behind." *Id.* ¶ 8. Plaintiff further alleges that after Mech's daughter learned of Plaintiff's sexual orientation, "at the beginning of almost every

22

work-related conversation [with Plaintiff], Mech would engage in a religious lecture to the point where it became clear that Mech was targeting [Plaintiff] by imposing his conservative Catholic beliefs on [Plaintiff] throughout the workday." *Id. ¶ 12.* Plaintiff also alleges that "Mech confronted [Plaintiff] directly regarding his homosexuality and its non-conformance with Mech's conservative religious beliefs." *Id. ¶¶ 18, 19.* The Court finds that Plaintiff has sufficiently pled facts suggesting that the religious harassment he endured was not due exclusively to his homosexual status. Plaintiff's allegations show that Mech's religious proselytizing began before Mech learned of Plaintiff's sexual orientation. Moreover, a fact finder could infer from Plaintiff's allegation that Mech repeatedly engaged in religious lectures targeted at imposing Mech's "conservative Catholic beliefs" on Plaintiff that religion (and not simply homosexuality) played a role in Defendant's employment decisions regarding Plaintiff and contributed to the hostility of the work environment. As a result, at this stage, this case is distinguishable from *Prowel* where the plaintiff alleged religious proselytizing focused exclusively on the plaintiff's sexual orientation.

In any event, *Prowel*'s holding is not controlling in this Circuit. Courts in other circuits have found that plaintiffs state a claim of religious discrimination in situations where employers have fired or otherwise punished an employee because the employee's personal activities or status—for example, divorcing or having an extramarital affair—failed to conform to the employer's religious beliefs. *See, e.g., Henegar v. Sears Roebuck and Co.*, 965 F.Supp. 833, 838 (N.D.W.Va. 1997) (living with a man while divorcing her husband); *Sarenpa v. Express Images Inc.*, 2005 WL 3299455, *4 (D.Minn. 2005) (extramarital affair). The Court sees no reason to create an exception to these cases for employees who are targeted for religious harassment due to their status as a homosexual individual. Accordingly, looking at the allegations in Plaintiff's

Complaint, the Court concludes that Plaintiff has alleged a set of facts that would entitle Plaintiff to relief. The Court denies Defendant's Motion to Dismiss Plaintiff's religious discrimination claim (Count II) for failure to state a claim.

### iii. *Title VII: Retaliation and Retaliatory Hostile Work Environment*

Finally, Defendant moves the Court to dismiss Plaintiff's retaliation and retaliatory hostile work environment claims. Although Plaintiff alleges only one count of "Retaliation" (Count III), within that count, Plaintiff alleges both that Defendant took discrete adverse employment actions in retaliation for Plaintiff's protected activity and that Defendant created a retaliatory hostile work environment. Am. Compl. ¶ 84. As to both claims, Defendant challenges Plaintiff's allegation that he engaged in "protected activity" on June 25, 2010, when Plaintiff confronted Mech about his discriminatory treatment of Plaintiff. As to Plaintiff's retaliation claim, Defendant argues that Plaintiff has failed to establish a causal link between his protected activity and any allegedly adverse action. Finally, as to Plaintiff's retaliatory hostile work environment claim, Defendant contends that Plaintiff's allegations of harassment and mistreatment are not severe or pervasive enough to constitute a retaliatory hostile work environment. The Court shall address Defendant's arguments in turn.

Title VII's anti-retaliation provision makes it unlawful for an employer "to discriminate against [an] employee . . . because he has opposed any practice" made an unlawful employment practice by [Title VII]." *King v. Jackson*, 487 F.3d 970, 971 (D.C. Cir. 2007) (quoting 42 U.S.C. § 2000e-3(a)). "[A]n employee seeking the protection of the opposition clause [must] demonstrate a good faith, reasonable belief that the challenged practice violates Title VII." *Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012, 1020 (D.C. Cir. 1981). Defendant contends that since Plaintiff failed to put forth any factual allegations that would support his claim of sex or

religious discrimination prohibited by Title VII, Plaintiff's opposition to Defendant's allegedly discriminatory conduct on June 25, 2010, is not sufficient to support a retaliation claim. Def.'s Mot. at 21. However, the Court found that Plaintiff's Complaint alleges facts sufficient to state a claim of sex-stereotyping and religious discrimination cognizable under Title VII. Consequently, the Court now finds that Plaintiff's June 25, 2010, meeting with Mech in which Plaintiff confronted Mech about his belief that Mech was discriminating against him based on "his religious beliefs and sexual stereotyping" constituted protected opposition conduct under Title VII.

Defendant next argues that Plaintiff's retaliation claim must be dismissed because Plaintiff has failed to connect his protected activity to the denial of his within-grade-increase on June 24, 2011.[8] In making this argument, Defendant only recognizes Plaintiff's March 16, 2011, meeting with an EEO counselor as protected activity since, as discussed above, Defendant does not believe Plaintiff's June 25, 2010, opposition conduct was protected by Title VII. Proceeding on this understanding, Defendant argues that the denial of Plaintiff's within-grade-increase cannot be evidence of retaliatory motive because, on March 9, 2011, *before* Plaintiff engaged in protected activity, Defendant gave Plaintiff a 90-day written warning that a negative report following the 90-day review period would result in the denial of Plaintiff's within-grade-increase. In other words, since Defendant contemplated taking an adverse action against Plaintiff before Plaintiff engaged in protected activity, the adverse action following the protected activity cannot be viewed as retaliatory. Defendant is correct that an adverse employment action that was already contemplated before a plaintiff engaged in protected activity cannot be evidence

---

[8] Defendant is correct that the only retaliatory adverse action Plaintiff can claim is the denial of his within-grade-increase since, as was previously established, Plaintiff failed to exhaust his constructive discharge claim.

of retaliation. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). However, the Court has found that Plaintiff also engaged in protected activity on June 25, 2010. Thus, the denial of Plaintiff's within-grade-increase—which took place entirely *after* the June 25, 2010 protected activity—remains a viable retaliatory adverse action. Of course, the temporal proximity between Plaintiff's June 25, 2010, protected activity and the date on which Defendant began contemplating the denial of Plaintiff's within-grade-increase—March 9, 2011—is substantial, undermining an inference of causation. *See Harris v. D.C. Water and Sewer Auth.*, 922 F.Supp.2d 30, 35 (D.D.C. 2013) ("this Circuit has . . . found that a two- or three-month lag between the protected activity and the adverse employment action generally does not establish the temporal proximity needed to prove causation"). However, "a close temporal connection is not the only way to prove causation. 'A plaintiff may also put forward direct evidence and disregard the presumption and its time limitations.'" *Beckham v. Nat'l R.R. Passenger Corp.,* 590 F.Supp.2d 82, 89 (D.D.C. 2008) (quoting *Vance v. Chao,* 496 F.Supp.2d 182, 186 (D.D.C. 2007)). Here, Plaintiff has alleged that in December 2010, when Plaintiff confronted Mech about a negative evaluation that he prepared of Plaintiff, Mech responded that he was "'damn angry' at [Plaintiff] for threatening to bring a claim for wrongful discrimination and harassment" and stated: "[Y]ou were going to string me out to dry, made accusations, put me in a position risked (sic) my job and position, and now this is the result . . . . You are to do as you are told and not question me or management in this office. You do not have rights, this is a dictatorship." Am. Compl. ¶ 27. These statements are strongly probative of retaliation. On February 2011, Plaintiff alleges he received another negative

performance evaluation based upon incorrect facts and mischaracterizations. *Id.* ¶ 29. Then on March 9, 2011, Mech notified Plaintiff that he was being placed on a 90-day "written warning" period at the end of which he would be denied his within-grade-increase if he received a negative review. *Id.* ¶ 31. On June 24, 2011, Mech submitted yet another negative evaluation of Plaintiff and denied Plaintiff's within-grade-increase. *Id.* ¶ 36. The Court finds that from Mech's probative statements and the series of negative reviews that followed, a fact finder could infer that Defendant denied Plaintiff's within-grade-increase in retaliation for Plaintiff's protected activity. Accordingly, in light of the "low hurdle" retaliation plaintiffs must overcome at the motion to dismiss stage, the Court denies Defendant's Motion to Dismiss Plaintiff's retaliation claim (Count III) for failure to state a claim. *Jones v. Bernanke*, 685 F.Supp.2d 31, 40 (D.D.C. 2010).

As for Plaintiff's retaliatory hostile work environment claim, Defendant argues that this claim must be dismissed because Plaintiff has not pled sufficient facts showing that Defendant subjected him to "discriminatory intimidation, ridicule, and insult of such sever[ity] or pervasive[ness] [as] to alter the conditions of [his] employment and create an abusive working environment." Def.'s Mot. at 22 (citing *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006)). However, in analyzing Plaintiff's hostile work environment allegations, Defendant only relies on allegations relating to actions Defendant took after March 16, 2011, the date Plaintiff first contacted the OIC Director to discuss his discrimination claims since Defendant disagrees that Plaintiff's June 25, 2010, confrontation with Mech constitutes protected activity. As the Court has found the June 25, 2010, confrontation constitutes protected opposition activity, the Court shall consider all of the alleged hostile actions Defendant took after that date.

Title VII prohibits an employer from creating or condoning a hostile or abusive work

environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65 (1986). As Defendant noted, a workplace becomes "hostile" for purposes of Title VII only if the allegedly offensive conduct "permeate[s] [the workplace] with 'discriminatory [or retaliatory] intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB,* 477 U.S. at 57, 65, 67 (1986)). This standard, occasionally referred to as the *Meritor–Harris* standard, has an objective component and a subjective component: the environment must be one that a reasonable person in the plaintiff's position would find hostile or abusive, and the plaintiff must actually perceive the environment to be hostile or abusive. *Id.* While the subjective test may be readily satisfied in employment discrimination claims, the objective test requires examination of the "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne,* 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88 (1998)).

The Court finds that Defendant's alleged actions following Plaintiff's June 25, 2010, protected opposition activity are sufficient to support a claim of a retaliatory hostile work environment. Among other things, Plaintiff alleges that after he confronted Mech, Mech informed Plaintiff that he would be subject to heightened scrutiny, verbally assaulted Plaintiff whenever Plaintiff sought clarification on his work assignments, prepared an "extremely negative" evaluation of Plaintiff's work on a project before the project was complete in contravention of standard operating procedure, created another negative performance evaluation based upon incorrect facts and mischaracterizations, placed Plaintiff on a 90-day written

warning, and subjected Plaintiff to a "hostile and abusive interrogation" in front of his co-workers. Am. Compl. ¶¶ 26-27, 29, 31, 36-37. Plaintiff also alleges that once he filed an informal complaint with the Library of Congress OIC Office on September 28, 2011, Christopher and Mech "prevented [Plaintiff's] access to documents and other data, while continuing to harass, intimidate, and retaliate against [Plaintiff]," and "criticized and penalized [Plaintiff] at work for taking time . . . to prosecute his administrative action." *Id.* ¶ 41. Plaintiff alleges that the stress of this work environment required him to seek medical assistance and counseling and take two leaves of absence from work. *Id.* ¶¶ 39, 44.

Courts in this Circuit have held that "a motion to dismiss is not the appropriate vehicle for evaluating the character or consequences of acts alleged to create a hostile work environment." *Perry v. Snowbarger*, 590 F.Supp.2d 90, 92 (D.D.C. 2008); *see also Holmes–Martin v. Leavitt,* 569 F.Supp.2d 184, 193 (D.D.C. 2008) (denying the defendant's motion to dismiss the plaintiff's hostile work environment claim because notice pleading only requires that the plaintiff plead facts that "support" a claim, not those that "establish" it). In *Holmes-Martin*, the district court denied a motion to dismiss a hostile work environment claim where the plaintiff alleged her employer created a hostile work environment through "isolation, subjection to public ridicule and harmful treatment that was so severe it caused psychological illness [including changing the locks on plaintiff's office, manipulating performance reviews, and hostile emails]" and that this treatment became "more hostile and hurtful" after the plaintiff filed her first formal EEO complaint. 569 F.Supp.2d at 193. The Court finds that the facts alleged in the present case are substantially similar to those the district court found sufficient to survive a motion to dismiss in *Holmes-Martin*. Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's retaliatory hostile work environment claim (Count III) because Plaintiff has pled facts that would

plausibly entitle him to relief.

### C. Constitutional Claims

As an alternative to his Title VII sex discrimination claim,[9] Plaintiff also brings two counts alleging Defendant violated the Due Process clause and the Equal Protection clause of the Fifth Amendment by sex stereotyping Plaintiff. Defendant argues that these constitutional claims must be dismissed because the Supreme Court in *Brown v. General Services Administration*, 425 U.S. 820 (1976) held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." Def.'s Mot. at 24 (citing *Brown*, 425 U.S. at 835 (1976)). The Court agrees. Here, Plaintiff is seeking to bring "parallel actions under both Title VII and other provisions of federal law to redress the same basic injury." *Ethnic Emps. of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985). This Circuit has specifically held that *Brown* preclusion applies when a federal employee seeks, as Plaintiff does, to bring *constitutional* claims that could be brought by federal employees under Title VII. *See Kizas v. Webster*, 707 F.2d 524, 541-543 (D.C. Cir. 1983) (holding that plaintiffs were precluded from pursuing sex and race discrimination claims directly under the Fifth Amendment because Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment). As the Court has found on the present record that Plaintiff has presented a cognizable Title VII claim of sex stereotyping and is permitting Plaintiff's sex stereotyping claim

---

[9] In Plaintiff's Complaint, Plaintiff only labels Count VI, his Fifth Amendment Equal Protection claim, as pled in the alternative to his Title VII sex discrimination claim. However, in the Court's review of Plaintiff's Complaint, the Court finds that Count V, Plaintiff's Fifth Amendment Due Process claim, is also a restatement of his sex discrimination claim. In this count, Plaintiff alleges that Defendant created a hostile work environment and constructively discharged Plaintiff because of his "prejudice towards homosexuals and/or persons whom do not conform to sex stereotypes recognized by the Defendant." Am. Comp. ¶ 95. Accordingly, the Court shall treat both counts as pled in the alternative to Plaintiff's Title VII sex discrimination claim.

to proceed under Title VII, the Court dismisses without prejudice Plaintiff's constitutional claims.

### D. Library of Congress Act and Library of Congress Policies and Regulations

Finally, Defendant moves the Court to dismiss Counts VII and VIII of Plaintiff's Complaint alleging Defendant violated the Library of Congress Act and various Library of Congress policies and regulations. Specifically, in Count VII, Plaintiff alleges that his termination violated the Library of Congress Act, 2 U.S.C. § 140, which provides that "all persons employed in and about said Library of Congress under the Librarian shall be appointed solely with reference to their fitness for their particular duties." Am. Compl. ¶ 105. In Count VIII, Plaintiff alleges that Defendant violated Library of Congress policies and regulations prohibiting harassment based on religious beliefs or sexual orientation. *Id.* ¶ 110. Defendant moves the Court to dismiss Count VII because the Library of Congress Act refers only to "appointments" and Plaintiff's claim relates to his *termination* from his position. Def.'s Mot. at 25 n.7. Defendant also argues that the Library of Congress has not waived its sovereign immunity as to claims under either the Library of Congress Act or Library of Congress regulations and policies. Def.'s Mot. at 28.

The Court agrees with Defendant that the Library of Congress Act, by its plain language, is inapplicable to Plaintiff's claim because the Act only applies to the "appointment" of individuals. *See* 2 U.S.C. § 140. Indeed, the few cases in which plaintiffs have invoked the Library of Congress Act, and courts have analyzed the Act, have all occurred in the context of initial appointments to the Library of Congress or promotions to entirely new positions within the Library. *See Schroer v. Billington*, 525 F. Supp. 2d 58, 60 (D.D.C. 2007) (initial appointment); *Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984) (promotion to

new position); *Boston v. Mumford*, 1976 WL 556, *2, *4 (D.D.C. April 26, 1976) (promotion to new position). Here, by contrast, Plaintiff is alleging that Defendant violated the Library of Congress Act by *terminating* him from his position. Plaintiff's invocation of the Library of Congress Act is thus inapposite.

Moreover, the Library of Congress Act does not create a private cause of action for its violation. *Schroer*, 525 F.Supp.2d at 65. As to the Library of Congress policies and regulations, it is unclear to the Court whether Plaintiff is citing these policies and regulations as evidence that the Library of Congress does not tolerate the harassment that Plaintiff has alleged or whether Plaintiff is claiming their violation as a separate cause of action. Plaintiff cites no law and provides no explanation as to how these policies and regulations provide him with a cause of action that is not subsumed under other statutory provisions.[10] Nor does Plaintiff argue that these policies are part of a contract between Plaintiff and the Library of Congress that Defendant has breached. Furthermore, the Library of Congress has not clearly waived its sovereign immunity as to the Act or the Library's policies and regulations.[11]

Nevertheless, even if a statutory cause of action is lacking, "judicial review is available when an agency acts *ultra vires*." *Trudeau v. FTC*, 456 F.3d 178, 190 (D.C. Cir. 2006) (quoting

---

[10] The Court notes that the actions of the Library of Congress are not reviewable under the Administrative Procedures Act ("APA") because the judicial review provisions of the APA only permit review of actions taken by an "agency" and the Library of Congress is not an agency as defined in APA §§ 551(1) and 701(b). *See Kissinger v. Reporters Comm. For Freedom of the Press*, 445 U.S. 136, 145 (1980); *Clark*, 750 F.2d at 102.

[11] Plaintiff concedes that neither the Library of Congress Act nor the Library's regulations and policies waive sovereign immunity for monetary damages against the Library. Pl.'s Opp'n. at 55. However, Plaintiff also seeks declaratory relief and an injunction reinstating Plaintiff in his position and an order restraining Defendant from engaging in further discriminatory conduct. *Id.* at 54. Plaintiff contends that sovereign immunity does not bar him from seeking this non-monetary relief. *Id.* at 55.

*Aid Ass'n for Lutherans v. United States Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003). Similarly, "sovereign immunity does not bar suits for specific relief against government officials where the challenged actions of the officials are alleged to be unconstitutional or beyond statutory authority." *Clark*, 750 F.2d at 102 (citing *Dugan v. Rank*, 372 U.S. 609, 621-23 (1963) and *Larson v. Domestic and Foreign Corp.*, 337 U.S. 682, 689-91 (1949)). These doctrines, however, are doctrines of "last resort" "intended to be of extremely limited scope." *Griffith v. Federal Labor Relations Authority,* 842 F.2d 487, 493 (D.C. Cir. 1988); *see also Larson*, 337 U.S. at 701-02 ("the action of an officer of the sovereign . . . can be regarded as so 'illegal' as to permit a suit for a specific relief against the officer as an individual only if it is not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void."). Both doctrines have been held not to apply "where the injury the plaintiff alleges may be fully remedied under a statutorily provided cause of action" such as Title VII. *Schroer*, 525 F.Supp.2d at 65; *see also Block v. North Dakota*, 461 U.S. 273, 285 (1983). As the Court has found on the present record that Plaintiff has presented employment discrimination and harassment claims cognizable under Title VII, the Court dismisses without prejudice Count VII and VIII of Plaintiff's Complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES IN PART AND GRANTS IN PART Defendant's Motion to Dismiss. The Court DENIES Defendant's Motion to Dismiss Plaintiff's sex and religious discrimination and retaliation claims under Title VII for failure to state a claim. However, to the extent these claims are based on Plaintiff's alleged constructive discharge, the Court GRANTS Defendant's motion to dismiss these claims, as they have not been timely exhausted. For the same reason, the Court GRANTS Defendant's motion to dismiss Plaintiff's

independent constructive discharge claim, Count IV. The Court, however, DENIES Defendant's motion to dismiss Plaintiff's claims to the extent they are based on the denial of Plaintiff's within-grade-increase, as Defendant has waived any exhaustion defense for this claim. Finally, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's Fifth Amendment claims—Count V and VI—and Plaintiff's claims under the Library of Congress Act and Library of Congress policies and regulations—Count VII and VIII. At this juncture, the Court dismisses these claims without prejudice since they parallel Plaintiff's Title VII sex-stereotyping, religious discrimination, and retaliation claims and Title VII is the exclusive remedy for employment discrimination claims brought by federal government employees. An appropriate Order accompanies this Memorandum Opinion.

_/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE